## ELSA BRETHERTON *v.* JOHN BRETHERTON
### (AC 21201)

Foti, Mihalakos and Dranginis, Js.

Argued April 22—officially released September 24, 2002

*Edward G. Fitzpatrick,* for the appellant (defendant).

*Maureen M. Murphy,* with whom, on the brief, were *Helen D. Murphy* and *Lynn A. Pellegrino,* for the appellee (plaintiff).

*Robert J. Malone,* for the minor children.

*Opinion*

DRANGINIS, J. The defendant, John Bretherton, appeals from the judgment of the trial court granting the postjudgment motion to modify visitation that was filed by the plaintiff, Elsa Bretherton, and permitting her to relocate to the state of Washington with the parties' two minor children. On appeal, the defendant claims that the court improperly applied the holding of our Supreme Court in *Ireland* v. *Ireland,* 246 Conn. 413, 716 A.2d 676 (1998) (en banc), in allowing the plaintiff to relocate with their minor children.[1] We affirm the judgment of the trial court.

The following facts are relevant to our resolution of the defendant's appeal. The plaintiff and the defendant

[1] The defendant also challenges the court's denial of his motion for judgment at the close of the plaintiff's case. The defendant sought judgment on the identical ground that he now raises with respect to the granting of the plaintiff's motion to modify visitation and to permit relocation. Therefore, our resolution regarding the granting of the plaintiff's motion to modify visitation and to permit relocation is dispositive of the defendant's claim that the denial of his motion for judgment was improper.

were married in 1986. They had two daughters, one born in 1988, the other in 1990. The parties' marriage was dissolved on January 9, 1996. In dissolving the marriage, pursuant to a separation agreement that was signed by the parties, each of whom was represented by counsel, the court awarded joint legal custody of the children, whose primary physical custody was with the plaintiff. The defendant, however, was to parent the children every other weekend and at least one evening during the week. The separation agreement, which became the dissolution decree, further mandated that "[n]either party shall change the principal place of residence of the children in excess of a thirty mile radius from the[ir] current residence without sixty days advanced notice to the other party."

At the time of the dissolution, the parties resided in Connecticut and lived within thirty miles of each other. To assist in caring for the daily needs of the children, the plaintiff's mother also lived with the plaintiff. In fact, the plaintiff's mother had resided with the plaintiff since the birth of the parties' first child.

In 1998, the plaintiff, a telecommunications executive who earned significantly more money than the defendant, changed employment to work for a firm in Stamford. The new employment entailed a one and one-half hour commute each way. In 1999, an international company took over the plaintiff's firm, causing the plaintiff to feel dissatisfaction and insecurity about her job stability. On or about April 1, 2000, the plaintiff informed the defendant that she had accepted a new job at a company in Vancouver, Washington, and that she intended to relocate with their children, and her mother, to Washington. In response, the defendant filed a motion for a temporary restraining order to preclude the plaintiff from removing their children from the state of Connecticut, which the court granted. Soon thereafter, the plaintiff and the defendant separately filed

postjudgment motions to modify visitation. In her motion, the plaintiff sought permission to relocate to Washington with the children. The defendant alternatively sought primary physical custody of the children.

A hearing on the motions ensued in which the court heard testimony from the plaintiff, the defendant and Arthur Tomak, the defendant's expert witness in the field of executive searches.[2] The plaintiff testified that she had worked as a manager in the telecommunications industry for the past twelve years and that she would not consider a comparable job in a different field. The plaintiff further provided that a former coworker had contacted her about applying for the position in Washington and that she had accepted the job before discussing it with the defendant. She accepted the position with the Washington firm because of the potential to earn more money than her current salary, her commute would be only fifteen minutes each way, thereby enabling her to spend more time with her children, and the firm appeared to be more family friendly. The plaintiff also acknowledged the lack of communication between herself and the defendant. The plaintiff moreover stated that if the court precluded the children from relocating with her, she would "have to stay in Washington [because] . . . I don't have a home here in Connecticut, I don't have a job here in Connecticut, I've taken a position out there."

At the close of the plaintiff's testimony, the defendant sought judgment in his favor on the basis of the holding in *Ireland* v. *Ireland,* supra, 246 Conn. 413. Specifically, the defendant argued: "I'd like to move for judgment . . . inasmuch as the—first two prongs of *Ireland* I don't believe have been met on the burden that the

---

[2] Tomak testified regarding various managerial positions available in the Connecticut and New York City region, but acknowledged that there were no current job openings in the telecommunications industry.

relocating parent has to carry with regard to—which is specifically set forth in *Ireland*, and I'll recite that for the record . . . . 'In summary, we hold, therefore, that a custodial parent seeking permission to relocate bears the initial burden of demonstrating, by a preponderance of the evidence, that (1) the relocation is for a legitimate purpose, and (2) the proposed location is reasonable in light of that purpose.' [Id., 428.] Your Honor, I submit to the court that—based on the testimony offered by the custodial parent, which is [the plaintiff], I think it's pretty clear, and it has really been unrebutted, that there has been no meaningful job search done by her." Further, the defendant contended that in accepting a job in Washington, the plaintiff did not consider the impact that the move would have on her children and their relationship with him. Therefore, the defendant urged, the plaintiff failed to meet her burden pursuant to *Ireland* in that she had not established that her intent to relocate was inspired by legitimate motives.

The court denied the defendant's motion for judgment. In doing so, the court stated: "The Supreme Court has imposed[d] a two-pronged standard. We all agreed on that when we first started this, and it is a burden shifting standard, and you're right, [the plaintiff] has to prove by a preponderance of the evidence that her move was made in good faith and will enhance the children's prospects, etc. . . . I'm faced with the dilemma that if I grant your motion, that ends the case, but I have not heard all of the evidence, and—I remain convinced that the higher standard still remains the best interest of the children. . . . So, we're forced into a situation where I haven't heard all the evidence, I'd like to hear all the evidence, and what I was going to pose a question to . . . counsel was, what if I agree that she hasn't met her burden, but after hearing the evidence I believe it is in the best interest of the children that they remain

with their mother, even though I believe that the mother's actions, you know, fly in the face of the first standard. The question or the problem, dilemma, that I'm faced with is that I either fudge the standard or I ignore best interest of the children, and I haven't heard all the—I have not prejudged the case, so my inclination is to continue with the case, to hold your motion in abeyance. I will decide it globally."

The court then heard testimony from the defendant. The defendant testified that he worked as a self-employed contractor and earned significantly less money than the plaintiff. He stated that if granted primary physical custody of the children, he would have to hire a high school student or nanny to care for the children while he was at work, but that he did not have any help "lined up" yet. The defendant also provided that he recently had purchased a two bedroom home in Trumbull and that his new neighbors offered to watch the children if he ever needed help caring for them. The defendant's immediate family, however, was unavailable to assist in caring for the children. The defendant also conceded that he knew very little about the school system in Trumbull and did not know the names of the schools that his children would potentially attend. The defendant further stated that the plaintiff had taken care of everything with respect to the children, including conferences with teachers and doctors' appointments. He also stated that a strong possibility existed that if the court granted the plaintiff permission to relocate to Washington with the children, he might move there as well.

After hearing all of the evidence, the court, in a memorandum of decision, rendered judgment in favor of the plaintiff on her motion to modify and permitted her to relocate with the children to the state of Washington. In arriving at its decision, the court found that the "plaintiff mother has not sustained her burden regarding good

faith for [the] move and, therefore, under the framework and criteria set forth by the Connecticut Supreme Court in the *Ireland* decision . . . the burden does not shift to the noncustodial parent to prove that the relocation is not in the best interest of the minor children . . . . That, however, while it is repugnant to, in effect, reward the patently bad behavior[3] of one party, in this case the plaintiff mother, having heard the testimony of the parties and after careful consideration of all the facts and evidence, this court finds that it is in the overall best interest of the minor children to relocate to Washington state with their mother and, further, that this court does not believe that it was the intention of the Connecticut Supreme Court to deprive the trial court of all discretion in making a fair determination under all the circumstances of any given case and that the ultimate standard continues to be that as articulated by that tribunal, to wit: 'We . . . take this opportunity to reaffirm that the best interests of the child must always govern decisions involving custodial or visitation matters.' [Id., 430]."

The court later articulated that it was in the best interests of the children to relocate to Washington with the plaintiff because "the [plaintiff], having been the primary caregiver for all of their lives, is in a better position to address and to meet their day-to-day needs as well as their long-term developmental needs as they mature . . . ." Moreover, the court found that "the [plaintiff's] parenting skills are far superior to those that are currently possessed by the [defendant] . . . . That based upon the testimony of the [defendant], he lacks an adequate family support network, other than his new neighbors, to address some of the issues that would undoubtedly arise day to day in the raising of his daughters . . . ." The continued presence of the

---

[3] The "patently bad behavior" to which the court referred was the plaintiff's failure to be forthcoming with the defendant and to disclose her intention to relocate.

maternal grandmother in the plaintiff's home also played a significant factor in the court's determination. This appeal followed.

On appeal, the defendant essentially raises one claim, namely, that the court, in contravention of the holding in the seminal case of *Ireland* v. *Ireland,* supra, 246 Conn. 413, improperly permitted the plaintiff to relocate with the children when it found that she had failed to satisfy her burden of demonstrating that the "relocation is in good faith for a legitimate purpose and to a location that is reasonable in light of that purpose."[4] (Internal quotation marks omitted.) Id., 424. The defendant contends that the failure of the plaintiff to meet her initial burden of proof as set forth in *Ireland* precluded the court from allowing her to relocate with the children.[5] We are not persuaded.

"A trial court is in an advantageous position to assess the personal factors so significant in domestic relations cases, and its orders in such cases will not be reversed unless its findings have no reasonable basis in fact or it has abused its discretion, or unless, in the exercise of such discretion, it applies the wrong standard of law. . . . [W]e do not review the evidence to determine whether a conclusion different from the one reached could have been reached." (Internal quotation marks omitted.) *Azia* v. *DiLascia,* 64 Conn. App. 540, 549, 780 A.2d 992, cert. denied, 258 Conn. 914, 782 A.2d 1241 (2001). The parties here do not contest the court's factual findings. Rather, the defendant challenges the

---

[4] We note that whether the court properly found that the plaintiff had failed to demonstrate that the proposed relocation was in good faith and for a legitimate purpose is not an issue before us on appeal. We, accordingly, do not make any findings in that regard.

[5] We note that the attorney for the minor children filed a brief on their behalf regarding the issue raised in this appeal. In the brief, counsel argues that the court properly concluded that it was in the best interests of the children to permit them to relocate with the plaintiff.

court's conclusion of law on the basis of the precedent of our Supreme Court, which led the trial court to its ultimate decision. Our review, therefore, is plenary, and we must determine whether the court's conclusion was legally and logically correct and in accordance with the holding in *Ireland*. See *DeSena* v. *Waterbury*, 249 Conn. 63, 72–73, 731 A.2d 733 (1999). We further note in our review that this issue is a matter of first impression before this court.

Relocation cases, such as the one before us, present some of the most complicated problems that courts are called on to resolve. See *Ireland* v. *Ireland*, supra, 246 Conn. 421; *Tropea* v. *Tropea*, 87 N.Y.2d 727, 736, 665 N.E.2d 145, 642 N.Y.S.2d 575 (1996) ("[r]elocation cases . . . present some of the knottiest and most disturbing problems that our courts are called upon to resolve"). Usually, in relocation cases, there is no good or right answer, especially for the child. That is so regardless of the level of parental conflict in the postjudgment family. The decision of the custodial parent to relocate causes a disruption and reordering of the child's relationship with the noncustodial parent.[6] Our Supreme Court in *Ireland* v. *Ireland*, supra, 431–32, adopted a burden shifting approach and the factors set forth by the New York Court of Appeals in *Tropea* to address and to analyze fairly the tangled myriad of issues that arise when a postjudgment, custodial parent intends to relocate. Therefore, a just resolution of the claim necessitates an overview and careful analysis of our Supreme Court's decision in *Ireland*.

Prior to our Supreme Court's decision in *Ireland*, courts were guided by the best interest of the child standard as set forth in General Statutes § 46b-56 (b) in

---

[6] It must be noted that noncustodial parents are seemingly free to relocate and to disrupt the parent-child relationship without interference or court involvement.

deciding postjudgment relocation disputes.[7] In *Ireland,* our Supreme Court sought to elucidate the appropriate standards for determining postjudgment relocation issues. Our Supreme Court held that "a custodial parent seeking permission to relocate bears the initial burden of demonstrating, by a preponderance of the evidence, that (1) the relocation is for a legitimate purpose,[8] and (2) the proposed location is reasonable in light of that purpose. Once the custodial parent has made such a prima facie showing, the burden shifts to the noncustodial parent to prove, by a preponderance of the evidence, that the relocation would not be in the best interests of the child." *Ireland* v. *Ireland,* supra, 246 Conn. 428. To evaluate the best interest of the child, our Supreme Court further adopted the factors as enumerated by the New York Court of Appeals in *Tropea* v. *Tropea,* supra, 87 N.Y.2d 727. "These factors are: '[E]ach parent's reasons for seeking or opposing the move, the quality of the relationships between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent, the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements.'   .   .   .

---

[7] General Statutes § 46b-56 (b) provides in relevant part: "In making or modifying any order with respect to custody or visitation, the court shall (1) be guided by the best interests of the child . . . ."

[8] Our Supreme Court further noted that examples of legitimate purposes to relocate may be: "[T]o be close to significant family or other support networks, for significant health reasons, to protect the safety of the child or another member of the child's household from a significant risk of harm, to pursue a significant employment or educational opportunity, or to be with one's spouse . . . who is established, or who is pursuing a significant employment or education opportunity, in another location. . . . We emphasize, however, that this list is not exclusive . . . ." (Internal quotation marks omitted.) *Ireland* v. *Ireland,* supra, 246 Conn. 424–25 n.5.

[Another relevant factor is] 'the negative impact, if any, from continued or exacerbated hostility between the custodial and noncustodial parents, and the effect that the move may have on any extended family relationships.' " (Citation omitted.) *Ireland* v. *Ireland,* supra, 431–32, quoting *Tropea* v. *Tropea,* supra, 740–41.

The issue now arises whether our Supreme Court, in articulating that burden shifting scheme, intended summarily to preclude a custodial parent who fails to demonstrate by a preponderance of the evidence "that the relocation is for a legitimate purpose and, further, that the proposed location is reasonable in light of that purpose"; *Ireland* v. *Ireland,* supra, 246 Conn. 425; from relocating with the parties' minor children without also considering the best interests of the children. Our reading of *Ireland* causes us to conclude that our Supreme Court did not intend to abandon the legal standard for custody decision-making solely on a custodial parent's failure to meet the initial burden of proof.

At the very outset of its analysis in *Ireland,* our Supreme Court announced that it had created the burden shifting scheme to further "our commitment to the best interests of the child standard . . . ." Id., 421. Moreover, after articulating the shifting burdens of proof, our Supreme Court again took the "opportunity to reaffirm that the best interests of the child must always govern decisions involving custodial or visitation matters." Id., 430. There is nothing in the language of *Ireland* to suggest that the burden shifting scheme, in particular with respect to the custodial parent's initial burden of proof, supersedes the standard of the best interest of the child. Rather, our Supreme Court explicitly provided that the salient inquiry remains that of the best interest of the child involved. Therefore, the failure of the custodial parent to meet his or her initial burden cannot in and of itself end the matter in relocation cases. To predicate a decision whether to permit relocation

on the basis of parental conduct only, even when that conduct appears unreasonable or illegitimate, would be to ignore the needs of the child and to reduce the court's inquiry to assessing the parents' action only.[9]

In adopting the shifting burdens of proof, our Supreme Court relied on the standards set forth by the American Law Institute in its Principles of the Law of Family Dissolution: Analysis and Recommendations (Tentative Draft No. 3, Pt. I, March 20, 1998) (Principles of the Law of Family Dissolution). *Ireland* v. *Ireland*, supra, 246 Conn. 424. The *Ireland* court actually formulated the custodial parent's burden on the basis of the American Law Institute's recommendations. Moreover, our Supreme Court found the relevant provisions in the Principles of the Law of Family Dissolution to be a useful means to address its concern about custodial parents who intend to relocate without a legitimate motive. Id.

Although the Principles of the Law of Family Dissolution does not necessarily recommend a burden shifting approach, it does provide that "[a] parent who has been exercising a significant majority of the custodial responsibility for the child should be allowed to relocate with the child so long as that parent shows that the relocation is in good faith for a legitimate purpose and to a location that is reasonable in light of the purpose." Principles of the Law of Family Dissolution, supra, § 2.20 (4) (a).

---

[9] We note here that in announcing the burden shifting scheme, the *Ireland* court stated: "We must recognize the possibility, however, that a custodial parent could be motivated to relocate, not by a desire to build a new and better life for the child and the new family unit as a whole, but rather, for example, by a vindictive desire to interfere in the relationship between the noncustodial parent and the child. Such an improper motive should not serve as the basis for a decision to put a greater distance between a noncustodial parent and a child." *Ireland* v. *Ireland*, supra, 246 Conn. 424. We first point out that no such vindication is alleged here. Moreover, we do not read this to mean that an improper motive precludes an inquiry into the best interest of the child.

The Principles of the Law of Family Dissolution then establishes, however, that if "a parent does not establish that the purpose for that parent's relocation is in good faith for a legitimate purpose and to a location that is reasonable in light of the purpose, the court may modify the parenting plan in accordance with the child's best interests and the effects of the relocation on the child. Among the modifications the court may consider is a reallocation of primary custodial responsibility, effective if and when the relocation occurs, *but such a reallocation should not be ordered if the relocating parent demonstrates that the child's best interests would be served by the relocation.*" (Emphasis added.) Id., § 2.20 (4) (c). Accordingly, the American Law Institute, on which our Supreme Court relied, advocates that the failure of a custodial parent to demonstrate the legitimacy of a proposed relocation does not preclude a finding that it is in the best interest of a child to permit relocation.

The concurring opinions in *Ireland* by Associate Justice David M. Borden and Associate Justice Richard N. Palmer provide further guidance and support for our conclusion. In his concurrence, Justice Palmer stated "that the burden allocation scheme the majority adopts today will be dispositive only in those rare cases in which the evidence adduced regarding the best interests of the child with respect to relocation is in equipoise." *Ireland* v. *Ireland,* supra, 246 Conn. 444 (*Palmer, J.,* concurring). Moreover, Justice Palmer stated that "the burden allocation scheme adopted by the majority is fully consistent with the statutory mandate that the *sole* consideration in custody matters be the child's best interests . . . ." (Emphasis added.) Id., 445 (*Palmer, J.,* concurring). Justice Borden in his concurrence agreed with Justice Palmer's characterization of when the allocation of the burden of proof is dispositive, but warned that courts should not lose sight of the other significant

aspects of the burden shifting scheme. Id., 441 (*Borden, J.*, concurring). Most significantly, however, Justice Borden elucidated that the court had announced the burdens of proof in postjudgment relocation cases, in part, to "[provide] a structure for the trial court regarding how to think about the case as it hears the evidence." Id. (*Borden, J.*, concurring). Clearly, those two justices in their concurring opinions did not contemplate that the adoption of a burden allocation scheme would result in the abrogation of the inquiry into the best interest of the child in a relocation case simply due to the failure of the custodial parent to satisfy his or her initial burden.

The defendant in his brief contends that to continue the inquiry after a custodial parent fails to meet his or her initial burden renders the "burden shifting mechanism . . . meaningless, a nullity, the effect of which would be to permit trial courts to consider issues of relocation without the plaintiff having ever sustained her initial burden as required under *Ireland.*" We cannot agree with that argument. As Justice Borden implicitly recognized and Justice Palmer explicitly stated, the burden shifting approach provides a method for the court to analyze postjudgment relocation issues, with the best interest of the child forming the basis of that methodology. Our Supreme Court did not intend for the burden shifting analysis to act as a means to preclude an inquiry into the best interest of the child. Accordingly, it does not follow that evaluating the best interest of the child, despite a custodial parent's inability to prove the legitimacy of a proposed relocation by a preponderance of the evidence, in any way erodes the purpose and goal of the burden shifting scheme.

This is not to state that a court should overlook or ignore the failure of the custodial parent to demonstrate that "the relocation is for a legitimate purpose and . . . is reasonable in light of that purpose." Id., 425. Rather,

the *Ireland* court clearly emphasizes that such a failure plays a significant role in determining the best interest of the child. Specifically, that significance is demonstrated by the *Ireland* court's endorsement of *Tropea* v. *Tropea*, supra, 87 N.Y.2d 727, which stated that one of the factors in determining the best interest of the child is "[e]ach parent's reasons for seeking or opposing the move . . . ." (Internal quotation marks omitted.) *Ireland* v. *Ireland*, supra, 246 Conn. 431–32.

In the present case, the court seriously and heavily weighed the plaintiff's failure to prove the legitimacy of the proposed relocation in permitting her to relocate and ultimately in modifying the custody orders. In response to the plaintiff's actions, the court ordered that the plaintiff "shall bear the financial responsibility for the basic costs associated with the exercise of visitation by the father . . . ." The court ordered that the plaintiff must incur all of the costs for the defendant's airfare, car rental and hotel while he exercises visitation in Washington state. Moreover, the court established a generous visitation schedule, granting the defendant visitation in Washington state for three to four nights every month. The court also ordered that the children visit the defendant in Connecticut for one week during the February school vacation, for four weeks total during July or August and also for four nights in December, including Christmas Eve. The court mandated that the plaintiff bear the entirety of the costs for the children to travel to Connecticut, including the costs for a responsible adult to accompany the minor children to and from their visitation. Finally, the court declined to award any child support due to "the factors enumerated in the findings of [the] court." On the basis of our analysis and the facts previously set forth, we conclude that in fashioning its orders, the court acted in accordance with *Ireland*.

The defendant further invokes several cases to support his proposition that the plaintiff's failure to meet her burden of proof and, thus, her failure to "establish a prima facie case," warranted the court's dismissal of the matter. The defendant cites to cases in which we affirmed the trial court's dismissal of matters on the basis of the plaintiff's failure to make out a prima facie case pursuant to Practice Book § 15-8.[10] Each case cited involves postjudgment motions for modification not involving the issue of relocation. Particularly, the defendant relies on *Walshon* v. *Walshon,* 42 Conn. App. 651, 681 A.2d 376 (1996). We conclude that the defendant's reliance on *Walshon,* and other cases cited in his brief, is misplaced. Given our conclusion that the *Ireland* court did not intend to establish a prima facie burden with a preclusive effect on custodial parents, those cases fail to persuade.

In *Walshon,* the defendant mother, the noncustodial parent, appealed from the judgment of the trial court dismissing her postjudgment motion for modification of custody where she had failed to demonstrate a substantial change in circumstances as a prima facie case. Id., 652. Affirming the trial court's dismissal, this court held that "[our Supreme Court] has limited the broad discretion given the trial court to modify custody orders under General Statutes § 46b-56 by requiring that modification of a custody award be based upon either a material change of circumstances which alters the court's finding of the best interests of the child . . . or a *finding that the custody order sought to be modified was not based upon the best interests of the child."* (Emphasis added.) *Walshon* v. *Walshon,* supra, 42 Conn.

---

[10] Practice Book § 15-8 provides in relevant part: "If, on the trial of any issue of fact in a civil action tried to the court, the plaintiff has produced evidence and rested his or her cause, the defendant may move for judgment of dismissal, and the judicial authority may grant such motion, if in its opinion the plaintiff has failed to make out a prima facie case. . . ."

App. 657. We concluded that the court properly based its decision on both of those critical considerations. Id.

Central to our decision in *Walshon* and our review of modifications of custody orders pursuant to § 46b-56 in general is the concept that courts must be guided by the best interest of the child. See, e.g., *Perez* v. *Perez*, 212 Conn. 63, 80, 561 A.2d 907 (1989); *Hall* v. *Hall*, 186 Conn. 118, 120–21, 439 A.2d 447 (1982); *Kelly* v. *Kelly*, 54 Conn. App. 50, 56, 732 A.2d 808 (1999); *Brubeck* v. *Burns-Brubeck*, 42 Conn. App. 583, 585, 680 A.2d 327 (1996). In fact, the overriding inquiry in modification issues remains the best interest of the child. *Hall* v. *Hall*, supra, 121. Accordingly, in *Walshon*, the trial court dismissed the defendant's motion for modification after it found a lack of a change in material circumstance *and* that modification was not in the best interest of the child. *Walshon* v. *Walshon*, supra, 42 Conn. App. 657.

Relocation presents the court with a substantial change in circumstances for the child and the parents. The cases cited by the plaintiff would require the court to move on to a best interest analysis. *Walshon* describes a nonrelocation modification procedure that allows the court to manage parental conflict, which is antithetical to the best interest of the child. The court has an interest in protecting children in high conflict, overlitigated matters, where the preliminary showing of a substantial change in circumstances as described in *Walshon* is critical to the court's exercise of its authority over particular contestants. Where a change of circumstances is not demonstrated at the two-pronged hearing, the parties should properly be deprived of their forum for conflict.

We recognize the temptation to end the inquiry when a custodial parent intends to relocate without a legitimate purpose. That procedural stumbling block, however, would thwart the overarching statutory mandate

of the best interest of the child. Relocation issues cannot be considered in a vacuum. To maintain a child focused analysis in relocation issues; see *Ireland* v. *Ireland,* supra, 246 Conn. 420–21; the failure of a custodial parent to meet his or her initial burden cannot have a preclusive effect. As the New York Court of Appeals aptly observed in *Tropea* v. *Tropea,* 87 N.Y.2d 727, the case on which the *Ireland* court relied: "While the respective rights of the custodial and noncustodial parents are unquestionably significant factors that must be considered . . . it is the rights and needs of the child that must be accorded the greatest weight, since they are the innocent victims of their parents' decision to divorce and are the least equipped to handle the stresses of the changing family situation." (Citation omitted.) Id., 739.

The judgment is affirmed.

In this opinion the other judges concurred.