PAMELA J. OLIVER *v.* STEVEN B. OLIVER
(AC 24585)

Flynn, Bishop and Mihalakos, Js.

Argued May 25—officially released September 14, 2004

*Jeffrey D. Ginzberg,* for the appellant (defendant).

*Daniel J. Mahaney,* with whom was *Timothy F. Sullivan,* for the appellee (plaintiff).

*Edward R. Giacci,* for the minor child.

*Opinion*

BISHOP, J. In this postmarital dissolution relocation case, the defendant father, Steven B. Oliver, appeals from the judgment of the trial court permitting the plaintiff mother, Pamela J. Oliver, to relocate to North Carolina with the parties' minor child and denying the defendant's motion to preclude the plaintiff from relocating with the minor child or, in the alternative, his motion for modification of custody.

On appeal, the defendant claims that in formulating its orders, the court (1) abused its discretion in finding that the plaintiff had relocated for a legitimate purpose and that the relocation was reasonable in light of that purpose, (2) improperly placed the burden of proof on the nonrelocating parent to prove that relocation was not in the best interest of the child, even though the relocating parent had not satisfied her burden of proof on the issue of legitimate purpose, and (3) improperly allowed the attorney for the minor child to offer his opinion on the ultimate issue of the child's best interest before the commencement of trial, which impaired the defendant's ability to receive a fair trial.[1] We affirm the judgment of the trial court.

---

[1] The defendant raised additional claims that the court (1) improperly concluded in an alternate holding that it could ignore the burden shifting scheme in *Ireland* v. *Ireland,* 246 Conn. 413, 717 A.2d 676 (1998) (en banc), to permit the plaintiff's relocation and (2) incorrectly relied on this court's decision in *Bretherton* v. *Bretherton,* 72 Conn. App. 528, 805 A.2d 766 (2002), because the facts of this case are distinguishable.

The record reveals the following facts and procedural history germane to our consideration of the defendant's appeal. The parties, who were married on May 30, 1992, have one minor child, James, born on December 14, 1992. On December 16, 1996, the parties' marriage was dissolved on the basis of its irretrievable breakdown. As part of its judgment, the court incorporated the parties' agreement that they would share joint legal custody of James, that his primary residence would be with the plaintiff and that the defendant would have reasonable rights of visitation. Subsequently, the defendant's visitation with James was expanded to include alternate weekends, and the parties, by agreement without court order, lengthened the defendant's summertime visitation with James from four to six weeks.

Since the dissolution of the parties' marriage, the plaintiff has remarried and has given birth to two additional children. She also has a child from a previous relationship who lives with her and her husband. At the end of 2002, the plaintiff informed the defendant

In support of those assertions, the defendant not only argues that the weight of the evidence does not support the holding, but he also appears to have fastened on a comment made by the court: "I'm not totally convinced that you moved a long distance from the father for a good reason." We do not find that statement inconsistent with the court's conclusion that the plaintiff did, in fact, move for a legitimate purpose. Although the lack of total conviction may reflect reasonable doubt in a criminal setting, in a civil case, a fact finder need not reach total conviction to conclude that one has satisfied his or her burden of proving that a fact is more likely than not. See *State* v. *Rizzo*, 266 Conn. 171, 210–11, 833 A.2d 363 (2003).

On the basis of our determination that the court properly tracked the decisional road map set forth in *Ireland*, we need not consider those alternate claims. For the same reason, we need not assess the defendant's claim that in its articulation the court evinced a readiness to disregard the strictures of *Ireland* by opining that even if the plaintiff had not met her initial burden of proving that the relocation was for a legitimate purpose, the move was in the child's best interest. We view that statement as gratuitous because the court, in fact, found that the plaintiff's relocation satisfied *Ireland*'s first prong. See *Ireland* v. *Ireland*, supra, 246 Conn. 428.

that she and her husband were contemplating a move to North Carolina for economic reasons. Subsequently, in the early months of 2003, the parties discussed the possible move, and in April, the plaintiff notified the defendant that she had purchased a home in North Carolina. On June 27, 2003, the plaintiff, her husband and her children, including James, moved to Garner, North Carolina. Nine days earlier, on June 18, 2003, the defendant filed a pro se motion seeking an order preventing the plaintiff from relocating with James and, in the alternative, an order that he be given custody of James. Simultaneously, the defendant filed a motion for the appointment of a guardian ad litem for James. Subsequently, on June 23, 2003, the court appointed Edward R. Giacci of the Shelton bar as counsel for the minor child. Later, on July 29, 2003, the plaintiff filed a motion seeking permission to relocate to North Carolina with James after she had, in fact, already moved. The defendant's June 18, 2003 motion was followed by another motion on July 22, 2003, captioned "Defendant's Motion for Custody and Support Postjudgment." In that motion, the defendant alleged that the plaintiff did not have a good faith basis for relocating the child to North Carolina and that such a move was not in the child's best interest.

After the defendant's initial motion in June, 2003, the parties entered into an interim agreement that the defendant's summer visitation with James would commence immediately. Accordingly, during the summer after the plaintiff and her family had relocated to North Carolina, James remained with his father until the beginning of August when he returned to North Carolina and began school.

The hearing on the parties' postjudgment motions began on August 1, 2003. At the commencement of the hearing, the court considered the defendant's motion for the appointment of a guardian ad litem for the minor

child. In conjunction with that part of the hearing, the court had for its review the notes of a psychologist, Howard M. Krieger. The notes were admitted into evidence without objection from either party. On the basis of the contents of Krieger's notes together with representations from counsel, the court concluded that the appointment of a guardian ad litem was not necessary.

Following a hearing on the parties' respective post-judgment motions, on August 29, 2003, the court entered orders granting the parties joint legal custody of the child with physical custody to the plaintiff in North Carolina and specified the rights of visitation in the defendant, including weekends in both North Carolina and Connecticut, school holiday periods and a substantial portion of the summer. The court also imposed on the plaintiff the costs of transportation for visitation in Connecticut and, finally, the court retained jurisdiction over all visitation and custody issues. After the court issued its memorandum of decision, it issued an additional memorandum in response to a request for articulation filed by the defendant. We view the initial memorandum of decision and the articulation as one. This appeal followed.

At the outset, we note that in reviewing a custody decision, this court "will not reverse a trial court's ruling on custody unless the court has incorrectly applied the law or could not reasonably have concluded as it did." *Duve* v. *Duve*, 25 Conn. App. 262, 266, 594 A.2d 473, cert. denied, 220 Conn. 911, 597 A.2d 332 (1991), cert. denied, 502 U.S. 1114, 112 S. Ct. 1224, 117 L. Ed. 2d 460 (1992). "The well settled standard of review in domestic relations cases is that this court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Internal

quotation marks omitted.) *Gilbert* v. *Gilbert*, 73 Conn. App. 473, 480, 808 A.2d 688 (2002); see also *Sheppard* v. *Sheppard*, 80 Conn. App. 202, 206, 834 A.2d 730 (2003).

I

The defendant first claims that the court abused its discretion in finding that the plaintiff relocated to North Carolina for a legitimate purpose and that the relocation was reasonable in light of that purpose.

In making his claim, the defendant tracks the language of our Supreme Court in *Ireland* v. *Ireland*, 246 Conn. 413, 717 A.2d 676 (1998) (en banc). In *Ireland*, the Supreme Court enunciated a decisional pathway and substantive criteria to guide trial courts in deciding difficult relocation cases. Finding that the trial court in *Ireland* had improperly placed the entire burden on the relocating custodial parent to prove that relocation would be in the best interest of the child, the Supreme Court determined that an appropriate standard would place on the custodial parent seeking permission to relocate "the initial burden of demonstrating, by a preponderance of the evidence, that (1) the relocation is for a legitimate purpose, and (2) the proposed location is reasonable in light of that purpose. Once the custodial parent has made such a prima facie showing, the burden shifts to the noncustodial parent to prove, by a preponderance of the evidence, that the relocation would not be in the best interests of the child." Id., 428.[2]

In addition to that decisional schema, the court also adopted substantive criteria for determining whether relocation comports with a child's best interest. Id., 433. In doing so, the court adopted those factors set forth by the New York Court of Appeals in *Tropea* v. *Tropea*,

---

[2] We use the generic term "relocation" to describe those cases in which the court is confronted with one parent who intends to relocate from his or her present location with a minor child or children over the objections, and often competing custodial claims, of the child or children's other parent.

87 N.Y.2d 727, 740–41, 665 N.E.2d 145, 642 N.Y.S.2d 575 (1996). As stated by the court in *Ireland,* those factors are: "[E]ach parent's reasons for seeking or opposing the move, the quality of the relationships between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent, the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements." (Internal quotation marks omitted.) *Ireland* v. *Ireland,* supra, 246 Conn. 431–32.

In assessing the parties' respective claims regarding the plaintiff's move to North Carolina and the defendant's competing custody claim, the court applied the guidelines set forth in *Ireland* and *Bretherton* v. *Bretherton,* 72 Conn. App. 528, 805 A.2d 766 (2002). The court stated: "Applying those guidelines, the method established in both the *Ireland* and *Bretherton* cases to help trial courts analyze postjudgment relocation cases, this court concludes that the [plaintiff's] move to North Carolina was for a legitimate purpose and that the proposed location is reasonable in light of that purpose. As previously indicated, the [plaintiff] was motivated by economic reasons; she believed that a move to a state where her present husband had relatives who would help him with employment, where the cost of living was lower, where the housing market was much less expensive, where a school offered programs to meet the needs of James, and where she had a job opportunity, would benefit her entire family. It might have been better if she had explored other opportunities in Connecticut, but she concluded it would not work for her family. The proposed location was reasonable in light of her motivating factors. She did not select

North Carolina on a whim; it was a state her family had visited many times, her husband had many relatives there, she explored the various school systems, searched for and found a job, and looked for an appropriate residence over a several month period."

Having determined that the plaintiff's relocation was for a legitimate purpose and that the move to North Carolina was reasonably related to that purpose, the court then assessed the impact of the move in light of several factors related to the best interest of the child and concluded that the move was, in fact, in James' best interest. Contrary to the defendant's claims, our review of the record finds support for each of the court's factual conclusions. As a consequence, we conclude that the court did not abuse its discretion in formulating its custodial orders.

II

The defendant next claims that the court incorrectly permitted the attorney for the minor child to offer his opinion on the ultimate issue of the child's best interest before the commencement of the hearing, which impaired the defendant's ability to receive a fair trial. We disagree.

The following additional facts are relevant to that claim. As noted, after the court appointed Giacci as the child's attorney, the defendant filed a motion for the appointment of a guardian ad litem. On August 1, 2003, when the court began to hear evidence on the parties' respective motions, it first heard oral argument on the defendant's motion for the appointment of a guardian ad litem. At the start of the argument, counsel for the defendant represented to the court that he filed the motion for a guardian ad litem after speaking with Giacci because he believed that Giacci may have felt compelled to reflect what the child was articulating to him rather than what might have been in the best inter-

est of the minor child. Following a colloquy between the court and the defendant's counsel during which counsel made several representations regarding conversations between himself and Giacci concerning the child's psychological and developmental status and the potential need for the appointment of a guardian ad litem to argue for the child's best interest rather than his preferences, the court turned to Giacci for his response. In turn, Giacci stated: "I have met with James on at least four occasions. I've explained to both parents my observations of James. I think he understands fully the issues that have been drawn by mom and dad, and I think he understands, too, the issues by mom and dad. I'll report to the court that the answers he has given to me on all of the questions I've asked him are appropriate answers. I believe he understands the questions that were asked. If I thought that he didn't understand, I would have brought that to the attention of both mom and dad and also to the attention of the court." Giacci concluded: "It's from my observations and from my experience that I've noticed that this child knows what he wants. He knows what is in his opinion, what is in his best interest. If I thought that he was incapable of expressing that, if I thought that he was not capable of saying to me, gee, I want to live with mom or I want to live with dad, I would have brought that to your attention and you would have then taken the appropriate action. I don't believe that this child is incapable of expressing his desires, and I think . . . his desires, for a ten year old . . . are reasonable desires. . . . This kid on this particular issue, Judge, had conversations with me, and he was articulate in understanding all of the issues raised in the conversations."

The defendant argues that the court incorrectly permitted counsel for the minor child to offer his opinion on the ultimate issue of the child's best interest, thereby depriving the defendant of a fair trial. The defendant

is mistaken.[3] Other than in his statement to the court suggesting that he believed the child's best interest could be represented by counsel, Giacci argued to the court as is the responsibility of any counsel. It is plain from the record that counsel for the minor child acted at all times as an advocate. He examined witnesses and submitted claims for relief as required by the court's standing orders. His performance appears to have been entirely consistent with his professional responsibilities. We therefore conclude that because counsel for the minor child did not inappropriately report to the court or opine on an ultimate issue, the subsequent custody proceeding was not tainted.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[3] Because we do not find that counsel for the minor child inappropriately reported to the court or opined on an ultimate issue, we need not reach the defendant's ancillary claim that counsel's initial report to the court tainted the subsequent custody proceeding.