# MIRMASOOD REZA *v.* SHEKIBA LEYASI
## (AC 26417)

McLachlan, Harper and Dupont, Js.

Argued March 29—officially released May 23, 2006

*Frank J. Kolb, Jr.*, with whom was *Joseph A. Marotti*, for the appellant (plaintiff).

*Paul A. Garlinghouse*, for the appellee (defendant).

*Opinion*

DUPONT, J. The plaintiff father, Mirmasood Reza, appeals from the trial court's judgment, dated February 4, 2005, granting the motion filed by the defendant mother, Shekiba Leyasi, to modify custody and support orders entered on October 22, 2003. On appeal, the plaintiff claims that the court improperly applied the best interest of the child standard, rather than applying the standard set forth in *Ireland* v. *Ireland*, 246 Conn. 413, 717 A.2d 676 (1998) (en banc), in determining that the minor child should remain in Massachusetts with her mother. We disagree and affirm the judgment of the trial court.

The parties were married in Pakistan on August 2, 1990. In December, 1990, the defendant came to the United States with her mother, sister and brother. One year later, the plaintiff joined the defendant and her family in New Haven. On April 6, 1999, a child was born to the parties. The parties resided together with the child until the defendant left the family home on April 16, 2002.[1] The defendant, with the child, went into hiding in Massachusetts.

---

[1] The defendant alleged that the plaintiff physically and sexually abused her. The defendant also alleged that she fled the marital home because the plaintiff threatened to take their child to Afghanistan. The court found that the defendant was not justified in going into hiding from April 16, 2002, until November 10, 2003. The court specifically found that the defendant's claims of abuse and the necessity of relocation were not credible.

In April, 2002, the plaintiff filed a complaint seeking dissolution of the marriage and custody of the minor child. On October 22, 2003, the court rendered judgment for dissolution of the marriage by default and awarded custody of the missing minor child to the plaintiff. On November 10, 2003, the plaintiff, after going to great lengths to locate the defendant and their child, discovered that they were living in North Quincy, Massachusetts. The plaintiff attempted to register the Connecticut dissolution in Massachusetts and personally served the defendant with the order of dissolution and custody at her home in North Quincy.

On December 3, 2003, and February 2, 2004, the defendant filed motions to open the judgment of dissolution, claiming that the court had no jurisdiction to determine her rights to property or to custody of their daughter because she did not know that a "divorce was pending." The court denied the defendant's motions to open on May 24, 2004. Subsequently, the parties agreed that the motions to open the dissolution should have been treated as motions to modify the custody and support orders entered on October 22, 2003, when the dissolution of marriage judgment was rendered.

Following a contested hearing on November 1 and 22, 2004, the court, treating the motions to open as motions to modify, made various findings and rendered judgment pursuant thereto on February 4, 2005. This appeal concerns those findings and conclusions, as they relate to custody of the child.[2]

The court found that although either parent would provide a caring home, forcing the defendant back to Connecticut with the minor child or ordering the child

---

[2] When the court rendered the default judgment of dissolution, it ordered that no alimony be awarded to either party and awarded all of the joint assets to the plaintiff. The property disposition is not involved in this appeal, nor is the amount of support for the child.

to reside with the plaintiff would be such a disruption in the child's life that it would not be in the child's best interest.[3] Accordingly, the court ordered that the parties share joint legal custody, with the defendant to have physical custody of the child. On February 14, 2005, the plaintiff filed a motion for articulation requesting the court to explain whether it considered *Ireland*. The court denied the motion on March 10, 2005.[4] On March 30, 2005, the plaintiff filed this appeal.

Before addressing the merits of the plaintiff's claim on appeal, we set forth our standard of review in domestic relations cases. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Notwithstanding the great deference accorded the trial court in dissolution proceedings, a trial court's ruling on a modification may be reversed if, in the exercise of its discretion, the trial court applies the wrong standard of law." (Citation omitted; internal quotation marks omitted.) *Williams* v. *Williams*, 276 Conn. 491, 496, 886 A.2d 817 (2005).

In *Ireland,* the Supreme Court enunciated a decisional pathway and substantive criteria to guide trial courts in deciding difficult relocation cases. Finding that the trial court had improperly placed the entire burden on the relocating custodial parent to prove that relocation would be in the best interest of the child, the Supreme Court determined the appropriate burden

---

[3] The court found that the child has resided with the defendant in Massachusetts continuously since April 16, 2002.

[4] At oral argument, the plaintiff's counsel stated that the motion for articulation was improvidently filed.

of proof. That standard would place on the custodial parent, seeking permission to relocate out of state with the child, the initial burden of demonstrating, by a preponderance of the evidence, that (1) the relocation was for a legitimate purpose and (2) the proposed location was reasonable in light of that purpose. Once the custodial parent makes such a prima facie showing, the burden shifts to the noncustodial parent to prove, by a preponderance of the evidence, that the relocation would not be in best interest of the child. See *Oliver* v. *Oliver*, 85 Conn. App. 57, 62, 855 A.2d 1022 (2004).

"In addition to that decisional schema, the court also adopted substantive criteria for determining whether relocation comports with a child's best interest. . . . In doing so, the court adopted those factors set forth by the New York Court of Appeals in *Tropea* v. *Tropea*, 87 N.Y.2d 727, 740–41, 665 N.E.2d 145, 642 N.Y.S.2d 575 (1996). As stated by the court in *Ireland*, those factors are: [E]ach parent's reasons for seeking or opposing the move, the quality of the relationships between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent, the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements." (Internal quotation marks omitted.) *Oliver* v. *Oliver*, supra, 85 Conn. App. 62–63.

*Ireland* and its progeny serve as an aid for courts analyzing and establishing the burden of proof in postjudgment relocation cases involving a parent with physical custody of a minor child. The present appeal does not involve postjudgment relocation. Prior to the plaintiff's filing the complaint, seeking dissolution of the marriage, the defendant had already absconded from

the marital home with the parties' minor child and relocated in North Quincy. Until the present time, the minor child has lived with the defendant in North Quincy. Although the default judgment of October 22, 2003, granted sole custody to the plaintiff, the court subsequently entered temporary orders in December, 2003, which ordered that the parties share joint legal custody of the child with physical custody and primary residence remaining with the defendant. The court, in its orders of February 4, 2005, from which the plaintiff appeals, ordered that the parties continue to share joint legal custody with physical custody and primary residence, again, remaining with the defendant. Despite the plaintiff's efforts to describe this case as a postdissolution relocation case, the facts demonstrate that no relocation was sought after a dissolution judgment had been rendered. As a result, *Ireland* is not controlling, and the basic question is not whether a party should be allowed to relocate, but whether the joint custody order, with physical custody in the defendant, dated December, 2003, and February 4, 2005, should be disturbed.

"The controlling principle in a determination respecting custody is that the court shall be guided by the best interests of the child. . . . In determining what is in the best interests of the child, the court is vested with a broad discretion." (Citations omitted; internal quotation marks omitted.) *Ford* v. *Ford*, 68 Conn. App. 173, 187–88, 789 A.2d 1104, cert. denied, 260 Conn. 910, 796 A.2d 556 (2002). Here, the court utilized the best interest of the child test and determined that it was in the child's best interest to remain in the physical custody of the defendant.

The plaintiff raises the concern that the outcome in this case is repugnant to any ideals of fundamental fairness and justice because the defendant is seemingly rewarded for her wrongful actions. We recognize that, if the best interests of all children are to be served, the

abduction of children to avoid the effect of possible future custody decrees must be deterred. We also recognize, however, that the imperative to discourage abduction must, when necessary, be secondary to the paramount concern in all custody matters, namely, the best interest of the child. Otherwise, bad behavior might be punished at the expense of a child's welfare. The well-being of the child rather than the punishment or reward of the parent ought to guide every custody case whether interstate or domestic.[5]

The plaintiff had every opportunity to argue that, while the child's short-term stability would be disrupted by a change in physical custody, the child's long-term stability would be undermined by the defendant's behavior in leaving the marital home with the child, hiding the child from the plaintiff and threatening to leave North Quincy if the plaintiff relocated to be near the child. In a well reasoned memorandum of decision, the court explained that it weighed all the facts and concluded that it would not be in the best interest of the minor child to force the defendant back to Connecticut with the child or to award physical custody to the plaintiff. The primary principle of the child's best interest is never easily applied once the litigants themselves have succeeded in creating a disruption in custody. The

---

[5] The court recognized the tension between these competing principles when it wrote: "Although the court does not condone the [defendant's] conduct back in April, 2002, when she went into hiding, and the court does not want to be perceived as rewarding the [defendant] for that conduct, this court has to weigh all the facts of this case in deciding what is best for this minor child. In doing so, the court concludes that it would not be in the best interest of the minor child to force the [defendant] back to Connecticut with the minor child or to award the [plaintiff] custody of the minor child. Both parents appear to be caring parents, and there is no indication the child would be at risk with either parent. However, to force the [defendant] back to Connecticut with the minor child or to order the child to reside with [the plaintiff] would be such a disruption in her life that it would not be in her best interest."

courts can only patch and repair, hoping to reduce the harm to a minimum.

The judgment is affirmed.

In this opinion the other judges concurred.