IN RE BRENDAN C.*
(AC 25326)
(AC 25327)

Dranginis, Bishop and DiPentima, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued January 18—officially released June 14, 2005

*Raymond J. Rigat,* for the appellant (respondent father).

*Joseph A. Geremia, Jr.,* for the appellant (respondent mother).

*Robert W. Clark,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Susan Quinn Cobb,* assistant attorney general, for the appellee (petitioner).

*Lucy W. Rankin,* for the minor child.

DiPENTIMA, J. In separate appeals, now consolidated, the respondent parents challenge the judgment of the trial court terminating their parental rights as to their minor child. In AC 25327, the respondent mother's sole claim is that the court failed to appoint a separate guardian ad litem for the child as required by General Statutes § 46b-129a. In AC 25326, the respondent father claims that (1) the child was not afforded adequate legal representation, (2) the court failed to appoint a guardian ad litem for the father as mandated by General Statutes § 45a-708 (a) and the procedural due process clauses of the fourteenth amendment to the United States constitution and article first, §§ 8 and 10, of the constitution of Connecticut, (3) the department of children and families (department) failed to make reasonable efforts at reunification as required by General Statutes § 17a-112 (j) (1), (4) the department failed to make reasonable accommodations in the provision of reunification services pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., (5) the court improperly determined that termination of the father's parental rights was in the child's best interest, (6) termination of the father's parental rights violated his substantive due process rights under the fourteenth amendment to the United States constitution and article first, §§ 8 and 10, of the constitution of Connecticut, and (7) termination of the father's parental rights violated his right to equal protection under article first, § 20, of the constitution of Connecticut. It is noteworthy that none of those claims was raised before the trial court. We affirm the judgment of the trial court.

The petitioner, the commissioner of children and families (commissioner), filed a neglect petition on April 6, 2001. At the time, the child, whose date of birth is November 16, 1997, was three years old. The petition was founded on the following facts. The department

had been called to investigate allegations of physical abuse, subsequently substantiated, that the father had thrown a remote control device that hit the child in the head. The mother reported instances of spousal abuse by the father. The mother was unable to control the child, who habitually hit her and swore at her when she directed him to do something. The child, who suffered from expressive speech disorder with significant speech and language delays, had a poor record of attendance at prekindergarten.

Prior to the disposition of the neglect petition, the respondents underwent court-ordered psychological evaluations by psychologist Ruth M. Grant in August, 2001. Grant found that the mother was emotionally detached and unable to control the child's physical aggression or to set boundaries. As to the father, Grant reported that he had a benign brain tumor that caused seizures, which were controlled by medication, and noted that the medications he took could have the effect of slowing brain functioning. Grant determined that although the father was "not technically retarded," he was functioning in "the mild mental retardation range . . . ." Grant also observed that the child appeared emotionally detached from the respondents.

The court issued an order of temporary custody on October 2, 2001, placing the child in the custody of the commissioner. The child was placed first in a safe home and then in a foster home. During that time, the child's speech and behavior improved, and he was toilet trained. In December, 2001, he was evaluated by Grant. She found him to be of average intelligence and noted that he continued to have problems in terms of verbal and perceptual skills but was showing signs of progress. During the evaluation, the child volunteered that he missed his parents and stated that he liked to visit them but indicated that he did not want to return home. Grant noted that the child was cooperative, responsive and

pleasant during the visit and that she had observed none of the aggressive behavior in which she had seen him engage with the mother.

Meanwhile, the department referred the respondents to the family reunification center (center) at a family and children's agency for reunification efforts. The respondents underwent psychiatric evaluation by Paula Levy. Levy observed that the mother had a "rigid and incomplete approach to potentially any situation, and, thereby, reduced ability to actually deal with it effectively." Levy concluded that the father's cognitive functions were somewhat impaired, but that he was "capable of addressing complicated, multifaceted issues and problems in an almost surprisingly comprehensive, nuanced way, reflecting considerable capacity for understanding, along with limitations." Levy disagreed with Grant that the father's reduced cognitive functions were the result of medication and attributed his mental condition to a head trauma he had sustained at the age of nine. The respondents also received couples counseling, individual counseling and parenting classes. In addition, the center supervised eighteen therapeutic visits between the child and the respondents.

On February 11, 2002, the child was adjudicated neglected, and nine months of protective supervision was ordered. The child was returned to the care of the respondents on February 20, 2002. A therapist from the center and a parent aide from another agency visited the home more than eight hours a week. The respondents continued to attend parenting classes, and the child and the respondents were provided with family counseling. A therapist was on call for the respondents through a pager at all times. Following his return to the custody of the respondents, the child's behavior deteriorated, and he began soiling himself again. The family's agency caseworker wrote a letter to the department in which she addressed four areas of concern, including the

respondents' inability to recognize the seriousness of the situation, their denial of responsibility, their inability to adapt parenting techniques they had learned to real life interaction with their son, and the father's failure to recognize that his loud and aggressive language was harming his son. On March 11, 2002, the caseworker informed the department that the child's home was neither a safe nor a healthy environment for him.

On March 14, 2002, a second order of temporary custody was issued, and the child again was removed from his parents. A motion to modify the order of protective supervision to a commitment of the child to the care and custody of the commissioner subsequently was granted. Both respondents and the child continued to undergo court-ordered psychological evaluations. At those evaluations, Grant noted that the mother seemed content for the child to visit, but unconcerned with his returning home, and concluded that the mother "did not display the appropriate concern for his care or display the ability to meet his needs." Grant observed that the father was more emotionally affected by the child's removal. He continued to blame the mother for all parenting difficulties. Grant observed that the child was traumatized by the domestic violence and screaming at home. She noted that he continued to say that he liked visiting with the respondents, but that he did not want to live with them.

The commissioner filed a petition on December 24, 2002, seeking termination of the respondents' parental rights. A four day trial was held in December, 2003. In a thorough, sixty-seven page memorandum of decision, issued March 1, 2004, the court ordered the termination of the respondents' parental rights. The court found that the department had made reasonable efforts at reunification, but that the respondents were unable to benefit from the services offered. The court determined that the commissioner had proved by clear and convinc-

ing evidence that neither of the respondents had achieved the level of rehabilitation necessary to provide appropriate parental care to the child, and that considering the child's age and need for permanency, neither respondent would be able to assume a responsible parental role within a reasonable time. The court concluded that it was in the child's best interest that the parental rights of both respondents be terminated and that he be adopted by his current foster parents.[1] Judgment was rendered accordingly on March 1, 2003. These appeals followed.

I

Both respondents claim that the child received inadequate representation because the court failed to appoint a guardian ad litem pursuant to § 46b-129a, which requires the court to appoint counsel for a minor child in any proceeding under § 46b-129.[2] It further directs

---

[1] The court ruled that the commissioner had failed to prove by clear and convincing evidence the first ground alleged for termination, which was that no ongoing parent-child relationship existed under General Statutes § 17a-112 (j) (3) (D) and, accordingly, dismissed that statutory ground. The commissioner need prove only one of the alleged bases for termination of parental rights. In re Destiny D., 86 Conn. App. 77, 85, 859 A.2d 973, cert. denied, 272 Conn. 911, 863 A.2d 702 (2004).

[2] General Statutes § 46b-129a provides in relevant part: "In proceedings in the Superior Court under section 46b-129 . . . (2) a child shall be represented by counsel knowledgeable about representing such children who shall be appointed by the court to represent the child and to act as guardian ad litem for the child. The primary role of any counsel for the child including the counsel who also serves as guardian ad litem, shall be to advocate for the child in accordance with the Rules of Professional Conduct. When a conflict arises between the child's wishes or position and that which counsel for the child believes is in the best interest of the child, the court shall appoint another person as guardian ad litem for the child. The guardian ad litem shall speak on behalf of the best interest of the child and is not required to be an attorney-at-law but shall be knowledgeable about the needs and protection of children. In the event that a separate guardian ad litem is appointed, the person previously serving as both counsel and guardian ad litem for the child shall continue to serve as counsel for the child and a different person shall be appointed as guardian ad litem, unless the court for good cause also appoints a different person as counsel for the child. No

that "[w]hen a conflict arises between the child's wishes or position and that which counsel for the child believes is in the best interest of the child, the court shall appoint another person as guardian ad litem for the child. . . ." General Statutes § 46b-129a (2). Thereafter, the guardian ad litem's role is to advocate the best interest of the child while counsel continues to advocate for the child in accordance with the Rules of Professional Conduct. See id. The respondents claim that counsel for the child acted in derogation of her role of advocate because she argued in support of full termination of parental rights rather than for the child's articulated desire to continue visiting with the respondents. They argue further that because the child's desire diverged from what his counsel believed to be in his best interest, a conflict within the meaning of § 46b-129a existed so that the court was mandated by statute to appoint a guardian ad litem.

The respondents' claim that the child received inadequate representation was not preserved at trial. Generally, unpreserved claims of a nonconstitutional nature are reviewable only under the plain error doctrine. Practice Book § 60-5;[3] *State* v. *Caprilozzi*, 45 Conn. App.

person who has served as both counsel and guardian ad litem for a child shall thereafter serve solely as the child's guardian ad litem. . . ."

[3] The father invites *Golding* review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis in original.) Id., 239–40. Review under *Golding* applies to civil cases as well as to criminal cases. *In re Shyliesh H.*, 56 Conn. App. 167, 178, 743 A.2d 165 (1999) (applying *Golding* analysis in termination of parental rights case).

455, 462, 696 A.2d 380, cert. denied, 243 Conn. 937, 702 A.2d 644 (1997). "To prevail under the plain error doctrine, [it must be demonstrated] that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice. . . . This doctrine is not implicated and review of the claimed error is not undertaken unless the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . ." (Citation omitted; internal quotation marks omitted.) Id. Furthermore, even if review is afforded, the respondents cannot prevail unless they demonstrate that the error likely affected the result of the trial. Id. We conclude that they have failed to make a showing of manifest injustice and, accordingly, cannot prevail on their claim.[4]

The respondents' claim is premised on the alleged conflict between the child's wishes and the position advocated by his counsel. As proof of the child's wishes,

The father merely states in his brief that "[o]rdinarily, unpreserved constitutional claims are reviewed under the [*Golding*] [d]octrine." It is the responsibility of the father to provide this court with an adequate record and to brief each issue adequately. The father has not presented this court with an adequate record to review this claim, nor has he provided any analysis of this claim in his brief to support a reversal of the court's judgment on the basis of *Golding* review. Claims on appeal that are inadequately briefed are considered abandoned. This rule applies to claims that the father is entitled to *Golding* review. Accordingly, this claim is deemed abandoned. See *State* v. *Miller*, 59 Conn. App. 406, 409–10, 757 A.2d 69 (2000), cert. denied, 255 Conn. 942, 769 A.2d 60 (2001); see also *State* v. *Kosuda*, 85 Conn. App. 192, 196, 856 A.2d 480 (2004) ("one sentence request for *Golding* review lacks the requisite analysis of its application to the case at hand").

In the alternative, the father also invites the court to engage in de novo review "because the trial court was required, sua sponte, to appoint a guardian" ad litem for the child. The father fails to provide any analysis as to why the court's alleged duty to appoint a separate guardian for the child mandates plenary review. Because the request for plenary review also was inadequately briefed, we do not review it de novo.

[4] We recognize that the respondents have standing to raise the claim on behalf of the child. See *In re Shaquanna M.*, 61 Conn. App. 592, 599, 767 A.2d 155 (2001).

the respondents refer to evidence and testimony presented to the court that the child expressed love and affection for them. In addition, they rely on the report by Grant dated May 11, 2002, which indicated that the child liked visiting with his parents, although he did not want to live with them. Contrary evidence, however, was before the court, including that the child did not communicate at the level of a six year old, which was his age at the time of trial, that he had difficulty verbalizing his emotions and often expressed himself through his actions. The child's behavior before and after his visits home contradicted his statement that he liked visiting. Prior to such visits, he was anxious and, following visits, aggressive and angry, had nightmares and engaged in bed-wetting. On that evidence, we cannot conclude that it was obvious that a conflict existed between the child's express wishes and the position advocated by his counsel.

Further, the respondents have not demonstrated that the alleged error affected the result of the trial. Had a guardian ad litem been appointed, the guardian ad litem's duty would have been to advocate the best interest of the child, which was shown by clear and convincing evidence to be the termination of the respondents' parental rights. The child's counsel would have been free to advocate exclusively for the child's legal interests, which she maintains would be the same position she took during the trial. The respondents fail to explain how the addition of a person advocating for the termination of parental rights would change the result of the trial, which was termination. Accordingly, their claim fails.

II

The father next claims that the court's failure to appoint a guardian ad litem for him violated § 45a-708

(a).[5] He did not raise his claim before the trial court. Review of unpreserved, nonconstitutional claims of error is available only if the challenged action constitutes plain error. *State* v. *Caprilozzi*, supra, 45 Conn. App. 462.[6]

Section 45a-708 (a)[7] directs the court to appoint a guardian ad litem for any parent in a termination proceeding when it appears that the parent is incompetent. The father argues that the evidence before the court should have made it apparent to the court that he was incompetent within the meaning of § 45a-708 (a). Although that statutory provision does not define incompetent, our Supreme Court has defined a mentally incompetent person as one "who is unable to understand the nature of the termination proceeding and unable to assist in the presentation of his or her case." *In re Alexander V.*, 223 Conn. 557, 563, 613 A.2d 780 (1992).

As evidence of his incompetence, the father refers to a social study stating that his brother had acted as

[5] The father also claims that the court's failure to appoint a guardian ad litem for him violated his right to procedural due process under the United States and Connecticut constitutions. Unpreserved claims of constitutional error may be reviewed under *State* v. *Golding*, supra, 213 Conn. 239–40. The claim for *Golding* review again is inadequately briefed, and we accordingly do not review that unpreserved constitutional claim. See footnote 3.

The father seeks plenary review of both his claim that the court's failure to appoint a guardian violated General Statutes § 45a-708 (a) and his claim that that failure violated his procedural due process rights. He provides no analysis as to why that standard of review should be applied; accordingly, we do not review that claim de novo. See footnote 3.

[6] See part I.

[7] General Statutes § 45a-708 (a) provides: "When, with respect to any petition for termination of parental rights filed under section 17a-112, section 45a-715 or section 45a-716, it appears that either parent of the child is a minor or incompetent, the court shall appoint a guardian ad litem for such parent. The guardian ad litem shall be an attorney-at-law authorized to practice law in Connecticut or any duly authorized officer of a child-placing agency if the child-placing agency is not the petitioner."

his conservator,[8] and Grant's and Levy's conclusions that he was mildly mentally retarded. Grant's report specifically states that the father "is functioning in the mild mental retardation range . . . [but he] is not technically retarded." Levy stated merely that the father was "possibly" mildly mentally retarded and noted that he was "capable of addressing complicated, multifaceted issues and problems in an almost surprisingly comprehensive, nuanced way, reflecting considerable capacity for understanding . . . ." Moreover, the father's testimony at trial showed that he understood that the purpose of the proceeding was to terminate his parental rights, that his ability to care for the child was at issue, and that he needed to convince the court that he cared for his son and would take any steps possible to be reunited with him. He refers to nothing in the record that supports the conclusion that he even appeared unable to understand the purpose of the termination proceeding or unable to assist in the presentation of his own case. On that record, we cannot conclude that the court so obviously erred in not appointing a guardian for the father that it affected the fairness and integrity of the termination proceeding.

Even if the court were required to appoint a guardian, there has been no showing that the lack of appointment affected the result of the termination proceeding. Although the father argues that a guardian could have advocated for reunification services appropriate to his medical and mental condition, he fails to suggest what additional services should have been provided beyond the long list of those already offered by the department.[9]

---

[8] There was no testimony at trial as to whether the brother was a conservator of the estate or of the person.

[9] In that regard, the father suggests that the department of mental retardation should have been involved. In support of his contention, the father cites one Connecticut case, *In re Devon B.*, 264 Conn. 572, 825 A.2d 127 (2003). The case is inapposite. *In re Devon B.* involved the termination of the parental rights of a mother who had been adjudicated incompetent and was incapable of earning a living or functioning on her own. Id., 576–78.

He also claims that a guardian could have sought alternatives to termination, such as open adoption, but he does not provide a basis for the guardian's authority to advocate for open adoption. Finally, he offers no grounds to support his intimation that trial counsel was ethically constrained from advocating for further services or open adoption.[10] Thus, the father has failed to make a showing of plain error and cannot prevail on his claim.

### III

The father next claims that the court's finding that the department made reasonable efforts at reunification as required by § 17a-112 (j) (1) was clearly erroneous.[11] "Before the court may grant a petition to terminate parental rights on the ground of failure to rehabilitate, it must find by clear and convincing evidence that the department has made reasonable efforts to reunite the child with the parent." *In re Mariah S.*, 61 Conn. App. 248, 254, 763 A.2d 71 (2000), cert. denied, 255 Conn. 934, 767 A.2d 104 (2001). "[R]easonable efforts means doing everything reasonable, not everything possible." (Internal quotation marks omitted.) *In re Daniel C.*, 63 Conn. App. 339, 361, 776 A.2d 487 (2001). The court's findings will be disturbed only if they are not supported by the evidence and are, in light of all the evidence in the record, clearly erroneous. Id., 348.

Furthermore, the mother at the time of termination had been receiving services from the department of mental retardation for more than ten years. Id., 574. Evidence presented at trial in the present case showed that the father was capable of supporting his family, providing housing and functioning independently. There is no record that the department of mental retardation ever provided services to the father.

[10] The father in his brief merely speculates that his counsel "may not have been at liberty to bring such action on the [respondent] father's behalf . . . ."

[11] The father requests de novo review of his claim. We recently have considered and rejected the proposition that procedural due process requires de novo review of termination cases. See *In re Tyqwane V.*, 85 Conn. App. 528, 542, 857 A.2d 963 (2004). We see no reason to reconsider the issue here.

The record shows that the department provided the father with numerous services in an intensive effort at reunification. Those services included multiple psychological and psychiatric evaluations, individual counseling, couples counseling, anger management classes, parenting classes, supervised visitation and a parental aide. The father asserts, however, that the department was required to coordinate services with the department of mental retardation and to provide him with medical counseling.[12] His contention rests on a conclusion that he is mentally retarded and that the department was unable to provide the services necessary in light of his condition. As discussed previously, the evidence before the court does not support the conclusion that he is mentally retarded. Further, the father failed to specify any of his needs that the department of mental retardation would have been better able to meet or services that it would have been better able to supply. Moreover, Grant reported that although the father was not technically retarded, he tested in the mildly mentally retarded range, and she testified that the services the department provided were appropriate in light of his cognitive limitations. The father provides no basis for his contention that medical counseling should have been provided. We presume that his claim rests on the report by Grant that his tumor and antiseizure medication slowed brain functioning and affected his cognitive functions.[13] Grant's conclusions regarding the cognitive effect of the tumor and antiseizure medicine were strongly contested by Levy. On that record, we cannot conclude that the court's finding that the department

[12] The father cites *In re Devon B.*, 264 Conn. 572, 825 A.2d 127 (2003), for the proposition that the department was required to coordinate services with the department of mental retardation. We disagree that *In re Devon B.* supports such a contention. See footnote 9.

[13] The father speculates, without providing any factual basis, that a change in his medication would have ameliorated his anger management issues and frustrations with parenting.

made reasonable efforts at reunification is clearly erroneous.[14]

## IV

The father claims that the department failed to make reasonable accommodations in the provision of reunification services pursuant to the ADA. That claim was not raised at trial. He again seeks consideration under the plain error doctrine.[15]

The ADA provides: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. " '[D]isability' means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102 (2). There was, as previously discussed, no evidence before the court that the father suffered, had a record of suffering or was regarded as suffering from a mental impairment that substantially limited him in any way. Furthermore, Connecticut does not recognize the ADA as providing a defense or creating special obligations in a termination proceeding. *In re Antony B.*, 54 Conn. App. 463, 472, 735 A.2d 893 (1999). The proper test in evaluating the department's reunification efforts is whether they were

---

[14] Because we conclude the court properly found that the department made reasonable efforts at reunification under § 17a-112 (j) (1), we do not review the constitutional coloring the father places on his claim. See *In re Mariah S.*, 61 Conn. App. supra, 268–69.

[15] See part I. The father also seeks plenary review of his claim. Other than asserting that the issue would have been raised at trial by the guardian ad litem that he claims the court should have appointed for him sua sponte, he provides no analysis as to why that standard of review should be applied. We accordingly do not undertake de novo review. See footnote 3.

reasonable under Connecticut's termination statute. See id., 471–72. We already have concluded that the department made reasonable efforts, within the meaning of § 17a-112 (j) (1). Because the father has failed to show that the court committed plain error, he cannot prevail.

V

The father claims that the court improperly determined that termination of his parental rights was in the child's best interest. "On appeal, we will overturn the trial court's decision that the termination of parental rights is in the best interests of the [child] only if the trial court's findings are clearly erroneous."[16] *In re Daniel C.*, supra, 63 Conn. App. 367.

The father claims in essence that the court improperly determined that termination was in the child's best interest because of the father's alleged mental deficiency. In that regard, he attempts to distinguish this case from *In re Nicolina T.*, 9 Conn. App. 598, 600, 520 A.2d 639, cert. denied, 203 Conn. 804, 525 A.2d 519 (1987), which concerned the termination of the parental rights of a paranoid schizophrenic mother who had an epileptic disorder. In reviewing the respondent mother's appeal, this court stated that "[t]ermination has been consistently recognized as being in the best interest of the child when the parent has a mental deficiency or illness which renders her unable to provide the child with necessary care." Id., 605. We also noted in that case, however, that "[i]t was the respondent's conduct and relationship to her children, and not her status as a mentally ill person, which predicated the trial court's decision to terminate her parental rights." Id., 607.[17] In

---

[16] The father again seeks de novo review. He has provided no analysis, and we accordingly decline to undertake plenary review. See footnote 3.

[17] We note that *In re Nicolina T.* may be distinguished on the ground that the respondent mother therein was mentally ill. There is no evidence that the father in this case is mentally ill.

this case, as in *In re Nicolina T.*, the court terminated the respondent father's parental rights because he was unable to provide his child with the necessary care.

In deciding whether termination was in the child's best interest, the court considered evidence before it that the father had denied the existence of domestic violence in his home, that he had anger management problems, that the child had behavioral and educational difficulties, and that the father's behavior contributed to the child's aggressive behavior. The court also considered evidence tending to show that the father could not meet the child's needs on his own. In addition, the court noted that the child had bonded with his foster family, was calling his foster parents mom and dad, and that his foster parents recognized and were capable of meeting his special needs. Furthermore, the court recognized that his behavior, speech and performance at school had improved while he was in the care of the foster family. Our review of the record leads us to conclude that the court did not clearly err in finding that termination of the father's rights was in the child's best interest.

## VI

The father claims that the termination of his parental rights violated his substantive due process rights under the fourteenth amendment to the United States constitution and article first, §§ 8 and 10, of the constitution of Connecticut.[18] That constitutional claim was not raised in the trial court, and we therefore review it under *State* v. *Golding*, supra, 213 Conn. 239–40.[19] Applying the

[18] Because the father failed to provide any independent analysis of his claim under the Connecticut constitution, we consider only his federal constitutional claim. See, e.g., *State* v. *LaBrec*, 270 Conn. 548, 555 n.10, 854 A.2d 1 (2004).

[19] The father has provided limited analysis of his claim to *Golding* review of the substantive due process and equal protection claims discussed in parts VI and VII. We therefore undertake *Golding* review. The father also seeks de novo review of his equal protection claim. He has provided no

*Golding* factors, we conclude that the father is unable to satisfy the third prong of *Golding* because he cannot show that the alleged constitutional violation clearly exists and clearly deprived him of a fair trial. See id.

The father argues in essence that because the court failed to appoint a guardian ad litem for him and one for the child, it improperly precluded evidence that a disposition other than complete termination of parental rights was in the child's best interest. As discussed in parts I and II, the father has not shown that the court's failure to appoint a guardian for him or for the child was improper. In addition, the father merely speculates that the guardians would have formulated an alternative to complete termination, but he fails to address why his trial attorney could not have presented such an alternative. Furthermore, the father does not take into account the evidence before the court that continued interaction between him and the child was detrimental to the child's well-being, and the court's finding that the termination of his parental rights was in the child's best interest. Because the father has failed to satisfy the third prong of *Golding*, his claim fails.

VII

The father's final claim is that the court's termination of his parental rights violated his right to the equal protection of the law under article first, § 20, of the constitution of Connecticut.[20] That claim was not preserved at trial, and we accordingly review it under *State v. Golding*, supra, 213 Conn. 239–40. We conclude that

analysis, and we accordingly decline to undertake plenary review. See footnote 3.

[20] Article first, § 20, of the constitution of Connecticut, as amended by articles five and twenty-one of the amendments, provides: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability."

the father is unable to show that the alleged constitutional violation clearly exists and clearly deprived him of a fair trial. Thus, he cannot satisfy the third prong of *Golding*.

The father argues that his parental rights were terminated solely because of his mental condition. The court's findings do not support such a conclusion. Although the court recognized that the father's aggressive behavior may have been predicated on his tumor or cognitive deficiency, it made no finding in that regard. Rather, the court concluded that termination was appropriate on the basis of the father's aggressive behavior, conflicted marital relationship, inability to recognize or to meet the child's needs, and the fact that his relationship with the child was "a source of tension, fear and conflict" for the child. The court's decision to terminate the father's rights was, thus, founded on his inability to parent the child and not on the father's status as a person with a mental condition.

The judgment is affirmed.

In this opinion the other judges concurred.