# BARBARA MCKECHNIE *v.* DENNIS MCKECHNIE
## (AC 31498)

DiPentima, C. J., and Espinosa and West, Js.

Argued April 25—officially released July 26, 2011

*Samuel V. Schoonmaker IV*, with whom, on the brief, was *Wendy Dunne DiChristina*, for the appellant (plaintiff).

*Charles D. Ray*, with whom was *Matthew A. Weiner*, for the appellee (defendant).

*Opinion*

DiPENTIMA, C. J. In this marital dissolution appeal, the plaintiff, Barbara McKechnie, challenges the order of the trial court awarding sole legal custody[1] of the two minor children to the defendant, Dennis McKechnie. On appeal, the plaintiff argues that (1) the court improperly applied General Statutes § 46b-56 (c) (12), (2) § 46b-56 (c) (12) is unconstitutionally vague and (3) the court abused its discretion in awarding sole legal custody to the defendant. We are not persuaded and, accordingly, affirm the judgment of the trial court.

The following procedural history and facts set forth by the trial court in its oral decision are relevant to this appeal. On October 5, 2006, the plaintiff commenced this dissolution action. In both the complaint and the defendant's cross complaint, each party requested joint legal custody[2] of the minor children. On August 3, 2007,

---

[1] General Statutes § 46b-56 (a) provides in relevant part: "Subject to the provisions of section 46b-56a, the court may assign parental responsibility for raising the child to the parents jointly, or may award custody to either parent or to a third party, according to its best judgment upon the facts of the case and subject to such conditions and limitations as it deems equitable. . . ."

[2] General Statutes § 46b-56a (a) provides: "For the purposes of this section, 'joint custody' means an order awarding legal custody of the minor child to both parents, providing for joint decision-making by the parents and providing that physical custody shall be shared by the parents in such a way as to assure the child of continuing contact with both parents. The court may award joint legal custody without awarding joint physical custody where the parents have agreed to merely joint legal custody."

the defendant moved to modify the pendente lite custody and parenting plan and sought sole legal custody of the minor children. In her proposed orders, the plaintiff again sought joint legal custody. Both the defendant and Bonnie L. Amendola, the attorney for the minor children, requested that the court award sole legal custody to the defendant.[3] Following a trial, the court rendered judgment dissolving the marriage on June 23, 2009.

After noting that it had reviewed and applied the relevant statutory criteria, the court dissolved the marriage of the parties and awarded sole legal custody of the minor children to the defendant. The court further ordered that the children were to reside primarily with the defendant and that he was to seek the plaintiff's input and opinion on all substantial nonemergency issues relating to the minor children. After receiving such input within forty-eight hours, the defendant was to make the decision that he believed to be in the best interests of the children.

The court explicitly discussed the statutory criteria of § 46b-56 (c) (12), which provides: "In making or modifying any order as provided in subsections (a) and (b) of this section, the court shall consider the best interests of the child, and in doing so may consider, but shall not be limited to . . . the mental and physical health of all individuals involved, except that a disability of a proposed custodial parent or other party, in and of itself, shall not be determinative of custody unless the proposed custodial arrangement is not in the best interests of the child . . . ." The court stated: "I want to be perfectly clear about [§ 46b-56 (c) (12)], about the mental and physical health of all individuals, except

---

[3] We note that on January 11, 2011, Amendola filed a statement adopting and incorporating by reference the position of the defendant in its entirety as set forth in the defendant's brief. See Practice Book § 67-13.

that the disability shall in and of itself not be determinative of custody. It's not. First of all, I don't know what disability there is or isn't. We've been banting those words about, but I don't have very good evidence about any of this. So all I can do is observe the behavior.

"And it is not—let's assume for a moment it is a disability. It is not the disability in and of itself. I'm not finding against [the plaintiff] in terms of her particular wishes or plan because she is bipolar or because she has a thought disorder [such as attention deficit hyperactivity disorder]."

The plaintiff appealed and subsequently filed a motion for articulation on May 6, 2010. She sought an articulation of the following issues: (1) whether the court applied the civil preponderance of the evidence standard when it determined that sole legal custody was in the best interests of the minor children; (2) whether the court found by a preponderance of the evidence that sole legal custody was in the best interests of the minor children; (3) whether the court found that the plaintiff has a disability, including, but not limited to, attention deficit hyperactivity disorder; and (4) whether the court considered accommodations, if any, that enabled the plaintiff to participate in and benefit from the court proceedings and participate in legal custody of the minor children. On May 17, 2010, the court answered in the affirmative to the first two issues set forth in the motion for articulation, and denied the motion with respect to the latter two. The plaintiff, pursuant to Practice Book § 66-6, filed a motion for review with this court. On July 28, 2010, the plaintiff's motion for review was granted, but the relief requested was denied.

I

The plaintiff first claims that the court improperly applied § 46b-56 (c) (12). Specifically, she argues that

once the court considered her mental health as a factor in determining which party would be awarded legal custody of the minor children, it was required to consider whether accommodations for her disability would have enabled her to retain custody. The defendant responds, inter alia, that we should decline to review this claim because it was not raised before the trial court. We agree with the defendant.

"It is well established that an appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. Practice Book § 60-5; *Yale University* v. *Blumenthal*, 225 Conn. 32, 36 n.4, 621 A.2d 1304 (1993) (issue not reviewed because not raised at trial). This court will review claims not raised at trial only in extraordinary circumstances. See *Williamson* v. *Commissioner of Transportation*, 209 Conn. 310, 317, 551 A.2d 704 (1988). . . . [See also] *Crest Pontiac Cadillac, Inc.* v. *Hadley*, 239 Conn. 437, 444 n.10, 685 A.2d 670 (1996) (claims neither addressed nor decided by court below are not properly before appellate tribunal); *State* v. *Miller*, 186 Conn. 654, 658, 443 A.2d 906 (1982) ([o]nly in the most exceptional circumstances will this court consider even a constitutional claim not properly raised and decided in the trial court)." (Citation omitted; internal quotation marks omitted.) *W.* v. *W.*, 248 Conn. 487, 505–506, 728 A.2d 1076 (1999).

We have reviewed the transcript and are unable to find any references regarding the issue of accommodations. As we frequently have stated, "[f]or this court to . . . consider [a] claim on the basis of a specific legal ground not raised during trial would amount to trial by ambuscade, unfair both to the [court] and to the opposing party . . . ." (Internal quotation marks omitted.) *Adamo* v. *Adamo*, 123 Conn. App. 38, 46–47, 1 A.3d 221, cert. denied, 298 Conn. 916, 4 A.3d 830 (2010); see also *Noonan* v. *Noonan*, 122 Conn. App. 184, 190, 988 A.2d 231, cert. denied, 298 Conn. 928, 5 A.3d 490

(2010); *Corrarino* v. *Corrarino*, 121 Conn. App. 22, 30, 993 A.2d 486 (2010). Additionally, we note that in *Logan* v. *Logan*, 96 Conn. App. 842, 845–46, 902 A.2d 666 (2006), we declined to review a party's claim raised for the first time on appeal that the trial court improperly failed to provide him with accommodations according to the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., during court proceedings. Accordingly, we decline to review this claim.

## II

The plaintiff next claims that § 46b-56 (c) (12) is unconstitutionally vague. Specifically, she argues that unless the term "disability" is read in accordance with the definition set forth by federal law in the ADA;[4] see 42 U.S.C. § 12102 (1),[5] then § 46b-56 (c) (12) is vague and impossible to apply. The defendant argues, inter alia, that § 46b-56 (c) (12) provides the required notice because it contains a core meaning. We agree.

At the outset, we note that this claim was not raised below and that the plaintiff seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). "Under *Golding*, a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the

[4] See 42 U.S.C. § 12101 et seq. "The ADA provides: [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. 42 U.S.C. § 12132." (Internal quotation marks omitted.) *In re Brendan C.*, 89 Conn. App. 511, 526, 874 A.2d 826, cert. denied, 274 Conn. 917, 879 A.2d 893, cert. denied, 275 Conn. 910, 882 A.2d 669 (2005).

[5] "The term 'disability' means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ." 42 U.S.C. § 12102 (1).

violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. . . . The first two *Golding* requirements involve whether the claim is reviewable, and the second two involve whether there was constitutional error requiring a new trial." (Citation omitted; emphasis added; internal quotation marks omitted.) *Ackerman* v. *Sobol Family Partnership, LLP*, 298 Conn. 495, 531, 4 A.3d 288 (2010). We agree that the record is adequate for review and that the plaintiff's claim is of constitutional magnitude. We conclude, however, that the claim fails under the third prong of *Golding*.

"Section 46b-56 (c) directs the court, when making any order regarding the custody, care, education, visitation and support of children, to consider the best interests of the child, and in doing so [the court] may consider, but shall not be limited to, one or more of [sixteen enumerated] factors . . . . The court is not required to assign any weight to any of the factors that it considers."[6] (Internal quotation marks omitted.)

---

[6] "The factors set forth in General Statutes § 46b-56 (c) are: (1) The temperament and developmental needs of the child; (2) the capacity and the disposition of the parents to understand and meet the needs of the child; (3) any relevant and material information obtained from the child, including the informed preferences of the child; (4) the wishes of the child's parents as to custody; (5) the past and current interaction and relationship of the child with each parent, the child's siblings and any other person who may significantly affect the best interests of the child; (6) the willingness and ability of each parent to facilitate and encourage such continuing parent-child relationship between the child and the other parent as is appropriate, including compliance with any court orders; (7) any manipulation by or coercive behavior of the parents in an effort to involve the child in the parents' dispute; (8) the ability of each parent to be actively involved in the life of the child; (9) the child's adjustment to his or her home, school and community environments; (10) the length of time that the child has lived in a stable and satisfactory environment and the desirability of maintaining

*Lederle* v. *Spivey*, 113 Conn. App. 177, 187, 965 A.2d 621, cert. denied, 291 Conn. 916, 970 A.2d 728 (2009).

We note that the court expressly made no finding of disability and then stated that even if it did, a finding of disability played no part in the court's decision to award sole custody to the defendant as a result of that disability. Despite suggestions in her briefs of an implicit finding of a disability, the plaintiff has not directly challenged the express factual finding by the court. Thus, we are bound by the court's findings. We also are mindful that in termination of parental rights cases, this court had rejected claims that the ADA provides a defense or creates special obligations. See *In re Brendan C.*, 89 Conn. App. 511, 526, 874 A.2d 826, cert. denied, 274 Conn. 917, 879 A.2d 893, cert. denied, 275 Conn. 910, 882 A.2d 669 (2005); *In re Antony B.*, 54 Conn. App. 463, 472–73, 735 A.2d 893 (1999). Specifically, we reasoned that a termination proceeding is "not a service, program or activity under the ADA." (Internal quotation marks omitted.) *In re Antony B.*, supra, 472.[7]

continuity in such environment, provided the court may consider favorably a parent who voluntarily leaves the child's family home pendente lite in order to alleviate stress in the household; (11) the stability of the child's existing or proposed residences, or both; (12) the mental and physical health of all individuals involved, except that a disability of a proposed custodial parent or other party, in and of itself, shall not be determinative of custody unless the proposed custodial arrangement is not in the best interests of the child; (13) the child's cultural background; (14) the effect on the child of the actions of an abuser, if any domestic violence has occurred between the parents or between a parent and another individual or the child; (15) whether the child or a sibling of the child has been abused or neglected, as defined respectively in section 46b-120; and (16) whether the party satisfactorily completed participation in a parenting education program established pursuant to section 46b-69b." (Internal quotation marks omitted.) *Lederle* v. *Spivey*, 113 Conn. App. 177, 187 n.12, 965 A.2d 621, cert. denied, 291 Conn. 916, 970 A.2d 728 (2009).

[7] The defendant directs our attention to sibling authority rejecting claims that the ADA applies in the context of custody determinations. In *Curry* v. *McDaniel*, 37 So. 3d 1225, 1233 (Miss. App. 2010), the Mississippi Court of Appeals noted that it had found "no persuasive authority which supports the proposition that the ADA applies or was intended to apply to child-custody determinations." The court reasoned that a custody determination

We now turn to the specifics of the plaintiff's constitutional claim. "Courts have derived the void for vagueness doctrine from the constitutional guarantee of due process." (Internal quotation marks omitted.) *State Management Assn. of Connecticut, Inc.* v. *O'Neill*, 204 Conn. 746, 757, 529 A.2d 1276 (1987). "It is well settled that, [i]n the absence of weighty countervailing circumstances, it is improvident for the court to invalidate a statute on its face. . . . A judicial holding that a legislative [a]ct is unconstitutional is one of very grave concern. We ought not, and will not, declare a statute to be unconstitutional unless our judgment is formed in the light of this rule of our law: It is our duty to approach the question with caution, examine it with infinite care, make every presumption and intendment in its favor, and sustain the [a]ct unless its invalidity is, in our judgment, beyond a reasonable doubt. . . . When a litigant claims that a law is vague on its face, this court will examine the challenged statute to see if it is impermissibly vague in all of its applications. A statute that is impermissibly vague in all its applications is vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all. . . . Such a provision simply has *no* core. . . . Put another way, a determination that the statute is not vague with respect to at least one application will defeat [the plaintiffs'] facial challenge. This burden is augmented by our strong presumption, noted above, in favor of the statute's constitutionality." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Sweetman* v. *State Elections Enforcement Commission*, 249 Conn.

---

was not a service, program or activity contemplated by the ADA, and that it was the best interests of the child that controlled the custody determination. Id. Similarly, in *Arneson* v. *Arneson*, 670 N.W.2d 904, 911 (S.D. 2003), the Supreme Court of South Dakota rejected an extension of the ADA into a judicial custody determination.

296, 320–21, 732 A.2d 144 (1999); see also *Packer* v. *Board of Education*, 246 Conn. 89, 113–14, 717 A.2d 117 (1998). We also note that "[c]ivil statutes must be definite in their meaning and application, but may survive a vagueness challenge by a lesser degree of specificity than in criminal statutes." (Internal quotation marks omitted.) *State Management Assn. of Connecticut, Inc.* v. *O'Neill*, supra, 757.

The defendant argues that while § 46b-56 (c) permits a trial court to consider many factors in reaching its determination of custody, its central focus or core meaning is whether the custody arrangement is in the best interests of the child. Our case law makes it abundantly clear that the best interests of a child control the custody determination. "It is statutorily incumbent upon a court entering orders concerning custody or visitation or a modification of such order to be guided by the best interests of the child." (Internal quotation marks omitted.) *Stahl* v. *Bayliss*, 98 Conn. App. 63, 68, 907 A.2d 139, cert. denied, 280 Conn. 945, 912 A.2d 477 (2006); see also *Reza* v. *Leyasi*, 95 Conn. App. 562, 567, 897 A.2d 679 (2006) (controlling principle in determination respecting custody is that court guided by best interests of child); *Gina M. G.* v. *William C.*, 77 Conn. App. 582, 587–88, 823 A.2d 1274 (2003) (regarding custody determination, court guided by best interests of child, including child's interests in sustained growth, development, well-being, continuity and stability of environment). Thus, as a whole, the core meaning of § 46b-56 (c) is a determination of orders premised on the best interests of the child.

With regard to a custody determination, our legislature has provided courts with a variety of factors that may be considered. One factor is the mental and physical health of all individuals involved. General Statutes § 46b-56 (c) (12). The core of subdivision (12) is clear: No matter what disability, or health issue, a person may

have, the court is free to consider that fact when making a custody determination, so long as that disability is not determinative. As a corollary, a court may use a disability as a determinative factor if it is in the child's best interests to do so. As a result of the core meaning of § 46b-56 (c) (12), and the statute as a whole, the plaintiff's constitutional challenge fails under the third prong of *Golding*.

## III

The plaintiff's final claim is that the court abused its discretion in awarding sole legal custody of the minor children to the defendant. Specifically, she presents a variety of claims regarding the court's decision to award sole custody to the defendant. We are not persuaded.

"Our standard of review of a trial court's decision regarding custody, visitation and relocation orders is one of abuse of discretion. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . Further, [t]he trial court has the opportunity to view the parties first hand and is therefore in the best position to assess the circumstances surrounding a dissolution action, in which such personal factors as the demeanor and attitude of the parties are so significant." (Citations omitted; internal quotation marks omitted.) *Taylor* v. *Taylor*, 119 Conn. App. 817, 821, 990 A.2d 882 (2010).

The plaintiff again argues that the court improperly awarded sole custody to the defendant as a result of her disability. As we previously have stated, the court made an explicit finding that the plaintiff did not have a disability and, in the alternative, even if she did, that factor was not the basis for its custody award. The plaintiff also contends that a custody evaluation conducted during the course of the trial was flawed. This claim ignores the fact that the plaintiff's trial counsel agreed to this procedure. "Actions that are induced

by a party ordinarily cannot be grounds for error [on appeal]." (Internal quotation marks omitted.) *Martin* v. *Martin*, 101 Conn. App. 106, 120 n. 7, 920 A.2d 340 (2007). With respect to the remaining claims regarding the court's custody order, after a thorough review of the record and the relevant statutory facts, we conclude that the plaintiff has failed to establish an abuse of discretion by the trial court.

The judgment is affirmed.

In this opinion the other judges concurred.