DENISE E. BROWN *v.* WILLIAM A. BROWN
(AC 32622)
(AC 32928)

Alvord, Bear and Pellegrino, Js.

Argued September 8—officially released November 8, 2011

*Reuben S. Midler*, with whom, on the brief, were *Wayne D. Effron* and *Yakov Pyetranker*, for the appellant (plaintiff).

*Janet A. Battey*, with whom were *Gaetano Ferro* and, on the brief, *Livia D. Barndollar*, for the appellee (defendant).

*Leslie I. Jennings-Lax*, with whom, on the brief, was *Kenneth B. Rubin*, for the minor children.

*Opinion*

ALVORD, J. The plaintiff-mother, Denise E. Brown, appeals from two separate orders of the trial court regarding modifications to pendente lite visitation orders. In her appeal of the trial court's May 18, 2010 order (first appeal), the mother claims that the court abused its discretion by improperly (1) utilizing a "future best interests" standard in awarding increased visitation to the defendant-father, William A. Brown, and (2) making certain findings with respect to the parties' eldest child. In her appeal of the trial court's October 21, 2010 order (second appeal), the mother claims that the trial court abused its discretion by (1) making findings placing blame on her, (2) failing to consider the factors listed in General Statutes § 46b-56 (c), and (3) improperly considering the guardian ad litem as a neutral party, crediting the guardian ad litem's testimony, and following the guardian ad litem's recommendation.[1] We dismiss the first appeal as moot. In the second appeal, we affirm the judgment of the trial court.

---

[1] The mother also claims that the court denied her due process when it considered the father's amended motion for modification, dated October 18, 2010, although the motion had been filed only two days prior to the hearing. The record shows that the court allowed the motion to be heard because both the amended motion and the original motion alleged that a change in the visitation schedule was warranted based on the best interests of the children and because the court had provided notice to the parties at their previous court date that it would be reviewing the visitation orders. The court stated: "So we're here. We need to be here. Everybody knew that. On May 18, when I entered my order, everybody knew we were going to come back. So there was a huge heads up at that particular time, and we're here. . . . So we need to address this, and I'm finding it hard to believe— and, you know, given my knowledge of [the guardian ad litem and the children's attorney], that everybody hasn't been brought into the loop on this—in other words, that this is real surprise because knowing how they operate, knowing my experience with this particular case is, is that everybody is in the loop. Everybody knew if there's a change of position or a new recommendation or whatnot." The mother had ample notice that these

The following facts and procedural history are relevant to our disposition of the mother's appeals. There have been three appeals from pendente lite orders in this marriage dissolution action, which commenced twenty-four months ago.[2] Prior to filing the second appeal, the parties had filed more than fifty motions at the trial level, the majority of which dealt with issues concerning access to their children. Since that appeal was filed, they have filed more than fifty additional motions with the trial court. The dissolution action has yet to proceed to a full trial on the merits.

Among its myriad findings, orders and rulings, the trial court issued an order on May 18, 2010, adopting, with some modifications, the parenting plan proposed by the attorney for the minor children. In this order, the court expressed hope that the father could one day reconcile with his eldest daughter, with whom he was not having visitation at that time, and additionally, that there could be a gradual reintroduction of the father into full participation in the lives of his younger daughters. Following the court's order, the mother filed a motion to open the order. The court denied the motion, and the mother appealed that denial. The parenting plan was modified again on June 16, 2010. On October 20, 2010, the parents returned to court for a hearing on the father's amended motion for modification of parenting time. The impetus for the father's motion was the recommendation of the guardian ad litem, Dr. Elizabeth Bergen, that the younger daughters have overnight visitation with him. On October 21, 2010, the trial court modified its prior orders to provide increased visitation

issues would be raised, and, therefore, we conclude that her argument that her due process rights were violated is meritless.

[2] In addition to the present appeals, the father appealed from the trial court's June 16, 2010 modification order, and the mother cross appealed. The cross appeal was dismissed on October 20, 2010, and the father subsequently withdrew his appeal on December 10, 2010.

to the father in the form of alternate weekend overnights with the two younger daughters. The second appeal followed. Additional facts will be set forth as necessary.

I

In evaluating the mother's appeal of the May 18, 2010 order, we turn to an issue raised by the father, both in his appellate brief and during oral argument, that this first appeal is rendered moot because the trial court issued superseding modification orders on June 16 and October 21, 2010. We agree.

"Mootness implicates [the] court's subject matter jurisdiction and is thus a threshold matter for us to resolve. . . . It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot. . . . Because mootness implicates subject matter jurisdiction, it presents a question of law over which our review is plenary." (Citation omitted; internal quotation marks omitted.) *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 502, 506–507, 970 A.2d 578 (2009).

As is not unusual in cases of this nature, there have been at least two modifications to the May 18, 2010 order, including the October 21, 2010 order, our second appeal, providing overnight visitation to the father with the two younger daughters. Thus, we are asked to

reverse the trial court even though the order in question has been superseded.[3] Because there is no actual controversy to resolve regarding the May 18, 2010 order and there is no practical relief that we can grant regarding that order, we dismiss the first appeal as moot.

## II

The mother also appeals from the court's October 21, 2010 order that the two younger daughters have alternate weekend overnight visits with the father.[4] First, she claims that the court abused its discretion by blaming the mother and the father equally for the contentiousness of the divorce and then relying on that finding in making its decision to modify the visitation order. Second, she claims that the court, when determining the best interests of the children, ignored the factors outlined in § 46b-56 (c) including the preferences of the minor children. Finally, she claims that the court abused its discretion by improperly considering the guardian ad litem to be neutral, crediting the

[3] We note that the mother renewed her claim at oral argument that the trial court inappropriately referenced the eldest daughter in the May 18, 2010 order. Yet, coincident with that argument, the attorney for the minor children advised us that the eldest daughter has been engaging in noncourt-ordered visitation with her father.

[4] The parties did not present a mootness argument regarding the second appeal despite the fact that there have been several modification orders since the October 21, 2010 order and the mother admitted at oral argument that the report of the custody study of John Collins, a psychologist, which was not available to the trial court at the relevant modification hearings, has since been issued and even modified *prior to* the time of oral argument. The fact that this report exists, and that it is not part of the record, is another compelling reason that we recognize the trial court's key role in determining sequential modification of visitation orders. Because Collins' findings are not in the record on appeal, we cannot consider them here. The appropriate path for counsel to have followed was to file additional modification motions, and, indeed, the trial court in the present case encouraged the parties to so do. These appeals were premature, at best, because the parties were "being given the opportunity to be heard and to vindicate [their] rights with respect to the temporary orders . . . ." *Strobel* v. *Strobel*, 73 Conn. App. 428, 435, 808 A.2d 698 (2002), appeal dismissed, 267 Conn. 901, 838 A.2d 209 (2003).

guardian ad litem's testimony, and relying on the guardian ad litem's recommendation in modifying the visitation order to include alternate weekend overnights with the father.

"Our standard of review of a trial court's decision regarding custody, visitation and relocation orders is one of abuse of discretion. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . Further, [t]he trial court has the opportunity to view the parties first hand and is therefore in the best position to assess the circumstances surrounding a dissolution action, in which such personal factors as the demeanor and attitude of the parties are so significant." (Internal quotation marks omitted.) *McKechnie* v. *McKechnie*, 130 Conn. App. 411, 421, 23 A.3d 779, cert. denied, 302 Conn. 931, 28 A.3d 345 (2011).

"In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Krystyna W.* v. *Janusz W.*, 127 Conn. App. 586, 590, 14 A.3d 483 (2011).

A

The mother claims that the trial court improperly made a factual finding blaming her for putting pressure on the middle daughter, which led the court to improperly award alternate overnight weekly visits to the

father against the best interests of the children. We disagree.

The record does not reveal that the court ever made a finding blaming the mother for pressuring the middle daughter. Instead, the court thoughtfully opined that it was "not a one-sided situation" but that it was "the conflict, the ongoing conflict, unresolved between Mr. and Mrs. Brown that is the problem." The court emphasized, to both mother and father, the harmful effects of the ongoing conflict on their daughters: "So the message to you is, is that it's in your hands how you wish to use this legal power which is awesome. . . . You can have a fight to the death or you can use [your attorneys] to craft something that is fair and to stop this conflict because that conflict is hurting your children . . . ." The court did not abuse its discretion in making these statements which are verbal dicta, not findings.

B

The mother next claims that the trial court abused its discretion by granting alternate weekend overnight visitation with the father which was not in the best interests of the children because the court failed to consider the various criteria listed in § 46b-56 (c), specifically the preferences of the minor children. We disagree.

"It is statutorily incumbent upon a court entering orders concerning custody or visitation or a modification of such order to be guided by the best interests of the child." (Internal quotation marks omitted.) *McKechnie* v. *McKechnie*, supra, 130 Conn. App. 420. Although § 46b-56 (c) states that the trial court shall consider the best interests of the child in modifying visitation orders, it also states that it *"may consider, but shall not be limited to"* a host of possibly relevant factors. (Emphasis added.) General Statutes § 46b-56 (c).

The mother and the attorney for the minor children argue that the court failed to take into account "the informed preferences of the child" under § 46b-56 (c) (3). "The ultimate concern of the trial court is to decide what is in the best interests of the child. . . . Although the child's wish is one factor for the court to consider in making that decision, it is certainly not the only one." (Citation omitted.) *Knock* v. *Knock*, 224 Conn. 776, 789, 621 A.2d 267 (1993). There is every indication, however, that, although it was not required to do so, the court took the children's preferences under very serious consideration and, in its discretion, decided against honoring the preferences of the children: "And what happens, in this particular instance, we have to get [the middle child] off the fulcrum. In other words, she can't be the one that is making the decisions here." The record reflects that the court considered the entirety of the evidence before it and, weighing many of the § 46b-56 (c) factors, made a determination consistent with the best interests of the children. The court was well within its discretion, and its findings were not clearly erroneous. By contrast, the predictable high conflict, overlitigated posturing of the parties in this case cannot be in the children's best interests. See *Strobel* v. *Strobel*, 73 Conn. App. 428, 436, 808 A.2d 698 (2002), appeal dismissed, 267 Conn. 901, 838 A.2d 209 (2003).

## C

The mother next claims that the trial court abused its discretion by considering the guardian ad litem to be "neutral," crediting the guardian ad litem's testimony over the mother's testimony, and following the guardian ad litem's recommendation. As a result, the mother claims that her due process rights were violated. We disagree.

General Statutes § 45a-132 (d) provides in relevant part that "if it appears to the judge or magistrate that

it is for the best interests of a minor having a parent or guardian to have as guardian ad litem some person other than the parent or guardian, the judge or magistrate may appoint a *disinterested* person to be the guardian ad litem." (Emphasis added.) "Disinterested" is defined as "unbiased by personal interest or advantage; not influenced by selfish motives." Random House Webster's Unabridged Dictionary (2d Ed. 2001). Webster's Dictionary lists the following synonyms for the word "disinterested": "impartial," "neutral," "unprejudiced," "dispassionate," and "fair." Id. "It is well established that the role of the guardian ad litem is to speak on behalf of the best interest of the child." *In re Tayquon H.*, 76 Conn. App. 693, 704, 821 A.2d 796 (2003). We have adopted the following list of duties of the guardian ad litem among others: "investigation of the facts necessary to get a clear picture of the child's situation, a determination of the child's best interest, frequent communication with the child and the court, *and the making of recommendations to the court through testimony.*" (Emphasis added.) Id.

The mother noted at trial that the guardian ad litem, Dr. Bergen, was a "seasoned veteran and a competent professional" with "no ax to grind." The attorney for the minor children professed that "clearly the court is well served by its guardian ad litem in this case." Thus, by all accounts, Bergen was fulfilling the responsibilities required of her by the court. She had met with the children and had corresponded with the parties, the appropriate school officials, the parents' therapists and the children's therapists. Bergen spoke to the children's therapists via telephone sixteen times over the course of the case. She was called as a witness by the father, and all three attorneys had fair opportunity to cross-examine her after she made her recommendation to the court that the minor children visit with their father on alternate overnight weekends.

"In pursuit of its fact-finding function, [i]t is within the province of the trial court . . . to weigh the evidence presented and determine the credibility and effect to be given the evidence. . . . Credibility must be assessed . . . not by reading the cold printed record, but by observing firsthand the witness' conduct, demeanor and attitude. . . . An appellate court must defer to the trier of fact's assessment of credibility because [i]t is the [fact finder] . . . [who has] an opportunity to observe the demeanor of the witnesses and the parties; thus [the fact finder] is best able to judge the credibility of the witnesses and to draw necessary inferences therefrom." (Internal quotation marks omitted.) *Blum* v. *Blum*, 109 Conn. App. 316, 329, 951 A.2d 587, cert. denied, 289 Conn. 929, 958 A.2d 157 (2008).

The trial court was well within its discretion to credit the testimony of the guardian ad litem because a guardian ad litem, who is not a parent, is appointed specifically for the reason that she is disinterested, so that she may make recommendations to the court regarding the best interests of the children. The fact that the guardian ad litem is a disinterested or neutral witness does not require the court to adopt the guardian ad litem's recommendation. The court must still determine the credibility of all witnesses and weigh testimony and other evidence accordingly. Thus, Bergen's role was to provide her recommendation as a neutral party for the court to consider, with all of the other evidence before it, and that is precisely what occurred here.

The appeal in AC 32622 is dismissed as moot; the judgment in AC 32928 is affirmed.

In this opinion the other judges concurred.