******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

SHARON DENUNZIO *v.* PETER DENUNZIO ET AL.
(AC 35679)

Bear, Sheldon and Lavery, Js.*

*Argued April 23—officially released July 8, 2014*

(Appeal from Superior Court, judicial district of Stamford-Norwalk, Hon. David R. Tobin, judge trial referee.)

*Michael P. Kaelin*, with whom was *William N. Wright*, for the appellant (plaintiff).

*Peter DeNunzio*, self-represented, the appellee (named defendant).

*Mary T. Surette*, with whom, on the brief, were *Leslie I. Jennings-Lax* and *Louise T. Truax*, for the appellee (defendant Douglas DeNunzio).

*Opinion*

SHELDON, J. The plaintiff, Sharon DeNunzio, appeals from the judgment of the trial court affirming the decision of the Probate Court appointing the defendant Peter DeNunzio, as conservator of the person and the estate of the parties' adult son, the defendant Douglas DeNunzio.[1] The plaintiff claims that the trial court improperly determined that her substantial rights were not prejudiced when the Probate Court admitted into evidence (1) opinion testimony as to which parent should be appointed to serve as conservator of Douglas, and (2) the report of the guardian ad litem, which allegedly contained inadmissible hearsay. We affirm the judgment of the trial court.

Although the parties share a tortuous history, only a small fraction of that history is relevant to the resolution of the plaintiff's claims on appeal. Douglas has been diagnosed with autism, schizophrenia, paranoia, and anxiety. On December 5, 2011, shortly after Douglas turned twenty-one years old, the defendant filed an application with the Probate Court to be appointed conservator of Douglas' person. The plaintiff objected to the defendant's application, and filed her own application asking that she be appointed Douglas' conservator. The court appointed Attorney Louise T. Truax as counsel for Douglas, and Attorney Richard J. Margenot as his guardian ad litem.

At the commencement of the proceedings on the dueling applications for conservatorship, the parties filed a written stipulation that the appointment of a conservator of both Douglas' person and his estate was necessary. The sole issue of contention before the Probate Court was who should serve as that conservator. Through his attorney, Douglas refused to choose between his parents. After an evidentiary hearing that spanned several days, the Probate Court appointed the defendant as conservator of the person and the estate of Douglas. In its memorandum of decision, the Probate Court stated that it had considered the factors set forth in General Statutes § 45a-650 (h) and found, inter alia, "that there is no doubt that both parents care [for] and love their son deeply; they cannot agree [up]on the proper treatment for [him] as they disagree with each other [as to his] current diagnosis; that the [plaintiff's] constant second guessing of the professionals in charge of [Douglas'] care causes inconsistent care, duress, anxiety and perseveration to [Douglas]; and that medical professionals involved with [Douglas'] current care and supervision have testified that it is in the best interest of [Douglas] to have [the defendant] appointed as conservator."

The plaintiff thereafter appealed the decision of the Probate Court to the trial court. In a thorough memorandum of decision, the trial court affirmed the decision

of the Probate Court. This appeal followed.

The standard of review applicable to probate appeals is well settled. General Statutes § 45a-186b provides in relevant part: "[T]he Superior Court shall not substitute its judgment for that of the Court of Probate as to the weight of the evidence on questions of fact. The Superior Court shall affirm the decision of the Court of Probate unless the Superior Court finds that substantial rights of the person appealing have been prejudiced because the findings, inferences, conclusions or decisions are . . . clearly erroneous in view of the reliable, probative and substantial evidence on the whole record, or . . . arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. . . ."

On appeal, the plaintiff claims that her substantial rights were prejudiced when the Probate Court admitted into evidence (1) opinion testimony as to which parent should be appointed conservator, and (2) the report of the guardian ad litem, which contained inadmissible hearsay. In considering these claims, we are mindful of the general principle that "[t]he rules of evidence in civil actions adopted by the judges of the Superior Court shall apply to all hearings [involving the appointment of a conservator]." General Statutes § 45a-650 (b). With that in mind, we address the plaintiff's claims in turn.

I

The plaintiff first claims that the Probate Court improperly permitted Dr. Nancy O'Hara, one of Douglas' medical providers, and Margenot, his guardian ad litem, to testify that the defendant should be appointed as conservator of Douglas. The plaintiff argues that the admission of that testimony was improper because our rules of evidence do not permit opinion testimony when that opinion goes to the ultimate issue to be decided by the trier of fact and the challenged testimony did not fall within the exception to the relevant rule because neither of those individuals is an expert on the factors set forth in § 45a-650 (h), which govern the appointment of a conservator, as those factors "present questions of fact and do not require any special scientific or technical knowledge to decide." We are not persuaded.[2]

Article VII of the Connecticut Code of Evidence governs the admissibility of opinions and expert testimony. Section 7-3 (a) of the Connecticut Code of Evidence provides in relevant part: "Testimony in the form of an opinion is inadmissible if it embraces an ultimate issue to be decided by the trier of fact, except that . . . an expert witness may give an opinion that embraces an ultimate issue where the trier of fact needs expert assistance in deciding the issue." Section 7-2 of the Connecticut Code of Evidence provides: "A witness qualified as an expert by knowledge, skill, experience, training,

education or otherwise may testify in the form of an opinion or otherwise concerning scientific, technical or other specialized knowledge, if the testimony will assist the trier of fact in understanding the evidence or in determining a fact in issue.''

Section 45a-650 (h) provides that, in considering whom to appoint as conservator, ''the court shall consider (1) the extent to which a proposed conservator has knowledge of the . . . conserved person's preferences regarding the care of his or her person or the management of his or her affairs, (2) the ability of the proposed conservator to carry out the duties, responsibilities and powers of a conservator, (3) the cost of the proposed conservatorship to the estate of the . . . conserved person, (4) the proposed conservator's commitment to promoting the . . . conserved person's welfare and independence, and (5) any existing or potential conflicts of interest of the proposed conservator.''

Although the factors set forth in § 45a-650 (h) present factual inquiries for the court's consideration, the nature of the court's inquiry, does not, in itself, preclude the admission of opinion testimony, or in any other way define the permissible evidentiary parameters for said consideration. The factors set forth are those to be considered by *the court* in determining whom to appoint as conservator. There is no requirement that the testimony or documentary evidence admitted be limited explicitly to the specific factors to be contemplated by the court. There surely exists a wide array of evidence that might inform the court's consideration of those factors, and the evidence submitted to the court, as noted, is regulated by our rules of evidence.[3] Although the factors may not necessitate the need for scientific or technical knowledge, they certainly may call for specialized knowledge to assist the trier of fact in its task.[4]

Here, the Probate Court found ''that . . . O'Hara, a pediatrician who specializes in neurological development problems, bipolar [disorder], [Lyme disease] and schizophrenia, and who has seen [Douglas] since his parents' divorce, and is available to [Douglas] by [tele]-phone when he needs her, has testified that despite her opinion that both parents have [Douglas'] best interest at heart, [Douglas] is very impressionable and the [plaintiff's] repeated requests for testing and ongoing interventions concern her, and that she is of the opinion that the [plaintiff] is not the best person to be [Douglas'] conservator.'' The plaintiff challenged the Probate Court's consideration of that opinion in her appeal to the trial court.

After setting forth the applicable provisions of Article VII of the Connecticut Code of Evidence, the trial court found that ''the Probate Court acted in accordance with [it] and did not abuse its discretion by allowing . . . O'Hara to testify. [She is an expert] in [her field] and [was] permitted under the Code of Evidence to offer

[her] opinion as to which of Douglas' parents [was] most capable of acting as his conservator."

In light of O'Hara's history with this family, it cannot be reasonably disputed that she is intimately familiar not only with Douglas' medical needs, but also with the ways in which the parties have responded to those needs over the years. On the basis of her experience with the parties, coupled with her medical expertise, O'Hara's opinion constituted specialized knowledge that informed several of the § 45a-650 (h) factors. We thus agree with the trial court's conclusion that O'Hara properly was permitted to offer her opinion as to which of Douglas' parents was more capable of serving as his conservator.

With respect to Margenot, as the trial court aptly pointed out, he was called to testify as a witness by the plaintiff, and the plaintiff asked him about conversations that he had with Douglas' teenage sister and who she thought should be appointed to serve as Douglas' conservator. That was the full extent of Margenot's testimony at the proceedings. During oral argument on the admissibility of his report, however, Margenot did state that he felt that the defendant was the better choice to serve as Douglas' conservator. It is the admission of this statement of his opinion, in addition to the statement of that opinion in his report, that the plaintiff challenges.[5]

In addressing the plaintiff's challenge to the admissibility of Margenot's opinion, the trial court reasoned: "[T]he function of a guardian ad litem is to make recommendations to the court as to the best interests of the party or parties which the guardian has been appointed to represent. A guardian ad litem could not discharge these duties unless the guardian was allowed to make a decision as to what the best interests of the represented party required and to communicate that decision to the court. In this case, the report of the guardian ad litem was thorough, logical and professional. The recommendations of the guardian [ad litem] were supported by his investigation and by the evidence presented to the Probate Court. The court finds that the Probate Court was justified in considering the opinion of the guardian ad litem in reaching its decision that [the defendant], rather than [the plaintiff], should be appointed as conservator of Douglas' person and estate."

We agree with the trial court's reasoning in rejecting the plaintiff's claim. "We have adopted the following list of duties of the guardian ad litem among others: investigation of the facts necessary to get a clear picture of the child's situation, a determination of the child's best interest, frequent communication with the child and the court, and the making of recommendations to the court through testimony." (Emphasis omitted; internal quotation marks omitted.) *Brown* v. *Brown*, 132 Conn. App. 30, 39, 31 A.3d 55 (2011).

As the Probate Court noted, "without . . . Margenot writing an opinion, there would be no reason to have a guardian ad litem." We agree and thus conclude that the Probate Court properly considered the opinion of Margenot because he was appointed specifically to investigate the circumstances of the parties and, based upon the specialized knowledge acquired through that investigation, to make recommendations to the court regarding Douglas' best interests and who the court should appoint as conservator in furtherance of those interests. We note that with respect to his written report, including his opinion, Margenot was available for examination and cross-examination by the parties during the hearing.

We therefore conclude that the trial court properly held that the Probate Court's admission of opinion testimony as to which parent should be appointed to serve as conservator for Douglas did not prejudice the plaintiff's substantial rights. See General Statutes § 45a-186b.

II

The plaintiff also claims that Margenot's report was improperly admitted because it contained inadmissible hearsay.[6] We note at the outset that Margenot's report was never actually admitted into evidence. Because, however, the Probate Court apparently did review that report and relied on Margenot's opinion, we will address the plaintiff's claim as to the propriety of its review of that report.

The Probate Court made the following reference to Margenot's report in its memorandum of decision: "Margenot . . . has filed his report which states that all parties are in agreement that a conservator is needed; that the issue at hand is who should be appointed conservator; that after reviewing voluminous depositions, medical history, exhibits introduced at the trial, interviewing family members, physicians, specialists, school administrators, and attending depositions, it is his conclusion that the [defendant] should be appointed [Douglas'] conservator of the person and estate; that [the defendant] should have the powers set forth in [§] 45a-655 of the Connecticut General Statutes; and that the [defendant] should have total charge in making rules regarding [Douglas'] health care, schooling and well-being." The Probate Court did not otherwise make any reference to Margenot's report or any of the materials contained therein.

Section 7-4 (b) of the Connecticut Code of Evidence provides: "The facts in the particular case upon which an expert bases an opinion may be those perceived by or made known to the expert at or before the proceeding. The facts need not be admissible in evidence if of a type customarily relied on by experts in the particular field in forming opinions on the subject. The facts relied on pursuant to this subsection are not substantive evi-

dence, unless otherwise admissible as such evidence." The commentary to § 7-4 explains: "Subsection (b) expressly forbids the facts upon which the expert based his or her opinion to be admitted for their truth unless otherwise substantively admissible under other provisions of the Code. Thus, subsection (b) does not constitute an exception to the hearsay rule or any other exclusionary provision of the Code. However, because subsection (a) requires disclosure of a sufficient factual basis for the expert's opinion, and because the cross-examiner often will want to explore the expert's factual basis further, subsection (b) does not preclude the trial court, in its discretion, from admitting the underlying facts relied on by the expert for the limited purpose of explaining the factual basis for the expert's opinion. See, e.g., 2 C. McCormick, Evidence (5th Ed. 1999) § 324.3, p. 356." Conn. Code Evid. § 7-4 (b), commentary. Indeed, this court has held that an expert witness may rely on hearsay in reaching an opinion. See *Johnson* v. *Sourignamath*, 75 Conn. App. 403, 405 n.1, 816 A.2d 631 (2003).

As the trial court found, there is no way to ascertain which portions of Margenot's report the Probate Court relied upon in determining whom to appoint as Douglas' conservator. The trial court nevertheless reviewed the plaintiff's claims, but found only a few of the claims of hearsay meritorious, and, despite those findings, determined that there was no evidence in the record indicating that the Probate Court relied upon that hearsay in appointing the defendant to serve as conservator.

We agree with the trial court in that there is nothing in the record that points to any specific portions of Margenot's report upon which the Probate Court explicitly relied. Our review of the record reveals no evidence that the Probate Court improperly considered inadmissible hearsay as anything other than something that Margenot considered in formulating his opinion. We thus presume that the Probate Court did not improperly consider inadmissible hearsay as substantive evidence and that the plaintiff's substantial rights were not prejudiced by the Probate Court's consideration of Margenot's report.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] In this opinion we refer to Peter DeNunzio as the defendant and to Douglas DeNunzio by his first name.

[2] It is noteworthy that the plaintiff introduced her daughter's opinion, through Margenot and on the basis of a conversation that he had with her daughter, that the plaintiff should be appointed conservator of Douglas. Thus, the plaintiff herself introduced nonexpert opinion testimony, which was also hearsay, as to the ultimate question to be decided by the Probate Court.

[3] To the extent that the plaintiff suggests that the court is confined to the factors set forth in § 45a-650 (h) in determining whom to appoint as conservator, and the best interests of the conservatee are not a consideration, we disagree. The statutory factors cannot be considered in a vacuum.

Consistent with the overall policy and purpose of a conservatorship, the best interests of a conservatee must always be a consideration and a guide in examining the statutory factors. In other words, because a conservator is appointed to serve the best interests of the conservatee, the statutory factors enumerated in § 45a-650 (h) must be considered with the overarching purpose of serving those interests.

[4] It cannot reasonably be the plaintiff's contention that the challenged witnesses must be experts on the statutory factors that the court must consider. For instance, how can one be an expert as to a particular individual's ability to be a conservator?

[5] We note that the plaintiff's challenge to Margenot's opinion is not to its substance, but is limited to its admissibility.

[6] To the extent that the plaintiff claims that the opinion of Margenot, as set forth in his report, was inadmissible, that claim is sufficiently addressed by our reasoning in part I of this opinion.